Renee BROWN, Karen E. Davis, Barbara L. Gooden, Henrietta Gassion, Sharon Hicks, Cheryl Turner, and Tina Turner, Plaintiffs,

v.

AMOCO OIL CO., Defendant.

No. H 91–199.

United States District Court, N.D. Indiana, Hammond Division.

May 18, 1992.

Ivan E. Bodensteiner, Valparaiso, Ind., Thomas R. Reites, Michael M. Mulder, Roberta Levinson, Laurie A. Wardell, Roslyn Lieb, Chicago Lawyers Committee for Civil Rights Under Law, Teresa A. Massa, Meites, Frackman, Muler & Burger, Chicago, Ill., for plaintiffs.

James E. McHie, McHie, Myers, McHie & Enslen, Hammond, Ind., Michael A. Warner, Condon A. McGlothlen of Seyfarth, Shaw, Jeffrey S. Heller, Amoco Corp., Chicago, Ill., for defendant.

## OPINION AND ORDER

MOODY, District Judge.

This matter is before the court on the plaintiffs' "Motion for Leave to Amend Complaint," filed January 17, 1992. The defendant responded, the plaintiff replied, and both sides submitted additional authority by letter.

Initially, the court GRANTS the motion insofar as it seeks to "add the name of one of the plaintiffs, Henrietta Gassion, to the allegation in paragraph 14 that Amoco has discriminated in light duty assignments." This amendment is unopposed by the defendant.

The plaintiffs also seek to amend their complaint in light of the Civil Rights Act of 1991 ("Act"). Specifically, they wish to amend their claim under Title VII of the Civil Rights Act of 1964 ("Title VII") by adding a "mixed motive" claim for relief, claims for compensatory and punitive damages, and a jury demand. They also wish to amend their claim under 42 U.S.C. § 1981 to state a claim for discrimination within an established contractual relationship.

On March 16, 1992, the court entered an order taking the motion under advisement:

The parties join issue on the question of whether [the Act] is retroactive. The court concludes that the resolution of this motion and this troublesome issue is not at this time crucial to discovery or other pretrial efforts by the parties. Accordingly, rather than add its voice to the developing district level debate over the Act's retroactivity, the court takes the present motion under advisement for sixty (60) days, pending anticipated developments in the United States Court of Appeals for the Seventh Circuit.

Last week, the Seventh Circuit spoke to the controlling legal issue in *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929 (7th Cir.1992). Accordingly, the court proceeds to the merits.

In *Mozee*, the Seventh Circuit found the legislative history hopelessly ambiguous and turned to judicial retroactivity doctrine, ultimately holding the substantive provisions of the Act should not apply retroactively either on appeal or in the district courts. *Id.* 963 F.2d at 936–41. *See also Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir.1992) (relying on retroactivity precedent); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992) (relying on legislative history). *But see Mozee*, 963 F.2d at 940–41 (Cudahy, J., dissenting). With reference to district court proceedings, the *Mozee* court, having wrestled with conflicting lines of Supreme Court retroactivity precedent, explained: "The rationale behind this conclusion is that it is unfair to make persons accountable for acts that did not violate statutory laws when they were performed." However, the Seventh Circuit went on to indicate in dicta that the procedural and remedial provisions of the Act might well be retroactive.

■ This court agrees that the substantive provisions of the Act are not retroactive. Not only because *Mozee* is binding precedent for this tribunal, but also because the *Mozee* court's holding on substantive changes in the law, if not all of its reasoning, comports with Justice Scalia's thorough analysis of retroactivity doctrine in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570,

1579–88, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring). This court means no criticism of the opinion in *Mozee*, which cites Justice Scalia's *Bonjorno* opinion numerous times. The Seventh Circuit in *Mozee* necessarily bowed to the Supreme Court's express admonition to the lower federal courts against attempting to resolve tension between Supreme Court precedents by declaring one or more of them defunct. *See Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989); *Mozee*, 963 F.2d at 935–36. Thus, the holding in *Mozee* could not go as far as Justice Scalia's concurrence in *Bonjorno*, which persuasively explained why the Supreme Court's relatively recent precedents creating a presumption of retroactivity [1] may be wrongly decided.[2] *See also Bonjorno*, 110 S.Ct. at 1577 (recognizing "apparent tension" in Supreme Court precedent). Neither the Seventh Circuit nor this court may prudently hold more than *Mozee* does in attempting to apply the Supreme Court's doctrine.

■ No matter the precise rationale, with regard to Count I of the complaint the court DENIES the motion insofar as it seeks leave to add "an alternative allegation that plaintiffs' race and sex were motivating factors," under the mixed motive provision of § 107 of the Act and Title VII. *See Price–Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Further, with regard to Count II, the court DENIES the motion to the extent that it seeks leave to plead "race discrimination in Amoco's contract of employment with plaintiffs" under 42 U.S.C. § 1981 and § 101(2)(b) of the Act. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Each of these attempted amendments would bring new substantive rights to bear in this litigation, a result expressly prohibited by *Mozee*.

That much is easy. As noted above, however, the *Mozee* court suggested in dicta that both the procedural and the remedial provisions of the Act might apply retroactively. *Mozee*, 963 F.2d at 938–40. But, the *Mozee* dicta is torn between its first inclination to make procedural and remedial provisions retroactive [3] and its recognition that this rule produces a considerable burden on courts facing new legislation.

[C]onsidering that [*Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), *supra* note 2,] is the general rule of construction, there is a flip side to the argument that courts should apply the procedural and damage provisions in effect at the beginning of proceedings. In short, it may cause undue confusion to require a trial court to conduct a provision-by-provision analysis of an act in order to distinguish between those provisions regulating procedure and damages

---

**1.** Justice Scalia terms these the *"Thorpe–Bradley"* line of cases, referring to *Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), and *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

**2.** Justice Scalia argues in light of precedent extending from Roman law through English common law, the Napoleonic codification, early American law, and every relevant Supreme Court decision predating *Thorpe* in 1969. He also argues in light of more recent Supreme Court precedent post-dating *Thorpe*, such as *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), where the Court held:

Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language re-

quires this result. By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms. *Id.* at 208, 109 S.Ct. at 471 (citations omitted). *See also Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985) ("statutes affecting substantive rights and liabilities are presumed to have only prospective effect").

**3.** In *Mozee*, the Seventh Circuit indicated that its decisions relying on the *Thorpe–Bradley* line of cases in *Littlefield v. McGuffey*, 954 F.2d 1337, 1345 (7th Cir.1992) and *Federal Deposit Ins. Corp. v. Wright*, 942 F.2d 1089, 1095–97 (7th 1991), might be reconciled with *Georgetown* through the substance versus procedure and remedies distinction. *Mozee*, 963 F.2d at 940.

and those provisions that affect substantive rights and obligations. In fact, the Court of Appeals for the Sixth Circuit's decision in *Vogel* apparently stands for the proposition that because some of the 1991 Act's provisions affect substantive rights, the entire Act should be prospectively applied. *Vogel,* 959 F.2d at 597. This position is not without merit.

*Mozee,* 963 F.2d at 940. The plaintiffs in this case seek to add "a claim for compensatory damages, punitive damages, and a jury demand" to their prayer for relief under Title VII. Thus, the present motion squarely presents this court with a necessary choice between provision-by-provision analysis or a blanket ruling that the Act is prospective in all of its parts.

The extended *Mozee* dicta is plainly not determinative. Nevertheless, the attention and pride of place it gives to provision-by-provision analysis indicate to this court that the Seventh Circuit will likely require that approach. Analyzing for the effect of each new provision on substantive rights may well be the best way of attempting to reconcile the apparent tensions in Supreme Court precedent. *But see Bonjorno,* 110 S.Ct. at 1585 (Scalia, J., concurring) ("retroactive application is never sought (or defended against) except as a means of affecting 'substantive rights and liabilities' at issue in the litigation"). Accordingly, the court proceeds to consider whether the remedial and jury trial provisions of the Act should control this case.

It is best to analyze the remedial provisions of §§ 102(a)(1) and 102(b) of the Act before the Act's procedural provision for a jury trial in § 102(c). This is because § 102(c) does not make a jury generally available for all Title VII claims, but only for those involving the newly added compensatory and punitive damage remedies. If, and only if, these new legal remedies are retroactive will the procedural matter of a jury trial under Title VII come into play in this case.[4]

This court agrees with the *Mozee* dicta that would apply the compensatory damages provisions of the Act retroactively. The court had analyzed *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), concluding that it "stands for the proposition that statutory provisions impacting substantive rights and obligations will not be retroactively applied." It later distinguished *Bennett* with reference to compensatory damages:

[T]he policy underlying the *Bennett* decision is not implicated when applying the damage provisions in effect at the time in which proceedings are initiated. Granted, the greater an award of damages for proscribed, unwanted conduct, the less likely that persons and entities will perform this unwanted conduct. Nonetheless, the traditional theory underlying at least compensatory damages is that they are meant to compensate parties for their losses. See Dan B. Dobbs, Remedies § 3.1 (1973). Because society's valuation of a victim's losses understandably changes over time, it does not seem unfair to force litigating parties to comply with the more recent statutory changes with regard to damages.

*Mozee,* 963 F.2d at 936. The Seventh Circuit also found precedent supporting its distinction between substantive changes in the law and changes in procedure or remedies. *Mozee,* 963 F.2d at 940 (citing *Lussier v. Dugger,* 904 F.2d 661, 665 (11th Cir. 1990) (*United States v. Vanella,* 619 F.2d 384, 386 (5th Cir.1980) (" 'statutory changes that are procedural or remedial in nature apply retroactively.' ")).

This court is troubled by the *Mozee* analysis to the extent that it trumps the acknowledged effect of a new damage provision on the expectations of regulated persons with a vague application of what seems "fair." Nevertheless, this court agrees that adding compensatory damages to the pre-existing equitable remedies available through Title VII is a change sufficiently marginal in nature to warrant retro-

4. Judge Curran certified this issue for an interlocutory appeal in *Hameister v. Harley–Davidson, Inc.,* 785 F.Supp. 113, (E.D.Wis.1992), but the case is not on record with the clerk of the Seventh Circuit.

active application. While adding compensatory damages is a change in what persons may have expected in planning their conduct under Title VII, it is a narrow change in remedies closely related to those that already exist. Where a new remedy does not affect the substantive elements of liability and also does not work a radical change in the consequences of regulated conduct, then, in accord with *Mozee*, this court holds it may be presumed retroactive where the legislature fails to speak on the issue.

The court, however, concludes that the punitive damage remedy in §§ 102(a) and 102(b)(1) of the Act is not retroactive. Adding punitive damages to the remedial options under Title VII directly affects the nature of substantive liability. Specifically, the Act allows plaintiffs to prove a new class of Title VII violation by showing "that the respondent engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights of an aggrieved individual." Act, § 102(b)(1). By adding punitive damages to Title VII where this newly defined subset of prohibited conduct exists, the Act works a radical change in the consequences of a Title VII violation.

Punitive damages are quasi-criminal in nature. *See, e.g., Pacific Mut. Life Ins. Co. v. Haslip*, — U.S. —, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1 (1991) (punitive damage law in most states designed to serve goals of retribution and deterrence; quasi-criminal in nature). They are designed and applied *not* for the benefit of the litigating plaintiff, but primarily to effect the general deterrence of especially harmful conduct.[5] Unlike existing remedies, it does not make plaintiffs whole—the existing remedies already accomplish that. This extraordinary "remedy" is qualitatively different than the ordinary remedies in a civil action.

The court concludes that it would be "unfair to force litigating parties to comply with the more recent statutory changes with regard to [punitive] damages." Potential Title VII defendants are entitled to notice that a penalty may result from their malicious or recklessly indifferent Title VII violations *before* the conduct that plaintiffs may seek to penalize.[6] Thus, this court concludes that punitive damages should not apply retroactively to conduct predating legislation enacting the penal remedy, except where the legislature expressly requires that result and no constitutional defect occurs.[7]

---

**5.** The RESTATEMENT (SECOND) OF TORTS declares:

(1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person for his outrageous conduct and to deter him and others like him from similar conduct in the future.

(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

RESTATEMENT (SECOND) OF TORTS § 908 (1979).

**6.** Indeed, at least one court has noted that a contrary conclusion might well implicate serious constitutional problems, thus bringing to bear the principle that federal courts, in interpreting statutes, should "select the construction that renders constitutional analysis unnecessary." *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 970–72 (2nd Cir.1985) (court chose prospective application of punitive damage provision in trademark legislation to avoid possible violations of *Ex Post Facto* Clause and Fifth Amendment) (noted in *General Elec. Co. v. Speicher*, 877 F.2d 531, 537 (7th Cir. 1989)). *Cf. Stanley v. Board of Governors of Federal Reserve System*, 940 F.2d 267, 271 (7th Cir.1991) (civil money penalty under banking laws analyzed for violation of *Ex Post Facto* Clause).

**7.** The court notes that it is constrained to partially disagree with its prior decision in *Aldana v. Raphael Contractors, Inc.*, 785 F.Supp. 1328 (N.D.Ind.1992) (Lozano, J.). In that pre-*Mozee* decision, Judge Lozano ruled that *both* remedial additions to Title VII are retroactive. While there is an appealing consistency in applying both of the new remedial provisions of the Act in the same way under retroactivity doctrine, the underlying policies and effects of these distinctly different remedies ultimately do not allow for such symmetry. *See* Lex Larson, *Civil Rights Act of 1991*, XVI, 2. at 39–40 (Matthew Bender 1992) ("This yields the surprising result that compensatory and punitive damages could be treated differently for retroactivity purposes although they are uttered in the same breath throughout most of the Act.").

■ Nevertheless, given the court's holding that the new legal remedy of compensatory damages under Title VII is retroactive, the court must proceed to the procedural matter of the right to a jury trial under § 102(c) of the Act. While the Seventh Circuit plainly left the application of procedural matters an open issue in *Mozee*, the court provided some useful guidance:

The trial court's application of the trial procedure in effect at the time of the trial does not seem to raise the same concerns as the retroactive application of provisions defining a party's substantive rights and obligations. That is, procedural rules generally regulate trial proceedings, and these rules are not generally targeted at proscribing unwanted conduct. Therefore, it does not seem unfair to require parties to comply with the rules of procedure applicable at the time in which they begin a new trial proceeding, especially considering that most persons and entities are not likely to conform their conduct in light of a slight change in the procedure that will be rendered if they violate the law.

*Mozee*, 963 F.2d at 939 (footnote omitted). This passage from *Mozee* cites Justice Scalia's opinion in *Bonjorno*, at the point where he notes that "[i]t will remain difficult, in many cases ... to decide whether a particular application *is* retroactive." 110 S.Ct. at 1587–88 (emphasis original).

■ The court holds that § 102(c) of the Act affords a jury trial to those Title VII plaintiffs claiming the retroactive remedy of compensatory damages. The court reaches this conclusion because "it does not seem unfair to require parties to comply with the rules of procedure applicable at the time in which they begin a new trial proceeding, especially considering that most persons and entities are not likely to conform their conduct in light of" a shift in fact-finding duties from the court to a jury. Indeed, applying newly enacted procedure to a case awaiting trial in district court is not, strictly speaking, a retroactive application of the law at all. When trial proceedings are still a prospective event, when the court has not yet done the affected thing, then application of the new law to that

thing may rightly be characterized as a prospective act. This is an application of the principle Justice Scalia indicated in the passage cited by *Mozee*, where he explains: "It depends upon what one considers to be the determinative event by which retroactivity or prospectivity is to be calculated." *Bonjorno*, 110 S.Ct. at 1588 n. 3.

■ The law controlling trial procedure is, fundamentally, law for the court rather than the parties. *See generally*, SHREVE & RAVEN–HANSEN, UNDERSTANDING CIVIL PROCEDURE, § 1[B] (1989) ("Roughly speaking, substantive rules of decision control conduct outside the courtroom, and procedural rules control conduct within."). This is why the *Mozee* court properly relied on fairness with reference to the parties' conduct. By contrast, it would be unfair to apply new laws on substantive liability or new deterrent remedies against people who may well have planned and acted in reliance on the old laws. Thus, laws directed at controlling or modifying conduct—as opposed to laws controlling only the court's methods for resolving disputes over conduct—are the laws to worry about with reference to the effect a new law should have on pending cases. With substantive changes in the law, the determinative event from which to gauge whether an application of new law is retroactive or not is the conduct at issue. With procedural changes, the determinative event should be use of the procedure by the court. *See, e.g., Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916) (Congress removed jurisdiction from judiciary to executive branch). Accordingly, the court GRANTS the motion to the extent that it seeks to amend the complaint to demand a jury trial of the Title VII claims in Count I.

Finally, the court notes the obvious. Congress should not put either the federal courts or the parties who rely on them in the onerous position of wastefully and laboriously litigating the retroactivity of new legislation. Congress should find in itself the political will and drafting competence that would conclusively resolve such mat-

ters one way or the other through a brief sentence within the statute.

In sum, the court GRANTS IN PART and DENIES IN PART the motion for leave to amend the complaint. The plaintiff may file a second amended complaint consistent with this opinion on or before May 29, 1992. FED.R.CIV.P. 15(a).[8]

SO ORDERED.

---

**8.** The parties shall monitor the developing precedent in this area and jointly file a simple citation to any directly controlling Supreme Court or Seventh Circuit Court of Appeals precedent that may evolve in the course of this litigation.