**William O. MOZEE, Gregory L. Rankin, Frederick Williams, et al., Plaintiffs–Appellees,**

v.

**AMERICAN COMMERCIAL MARINE SERVICE COMPANY, Defendant–Appellant.**

No. 90–2660.

United States Court of Appeals, Seventh Circuit.

May 7, 1992.

As Amended May 14 and May 18, 1992.

Ronald E. Elberger, Mark R. Waterfill, Bose, McKinney & Evans, Mark W. Ford (argued), Johnson, Smith, Densborn, Wright & Heath, Indianapolis, Ind., Samuel G. Hayward, Levin & Hayward, Louisville, Ky., Jerry Ulrich, New Albany, Ind., for plaintiffs-appellees.

James S. Whitehead (argued), Sidley & Austin, Chicago, Ill., John K. Gordinier, Michael W. Lowe, Frank G. Simpson, III, Pedley, Ross, Zielke, Gordinier & Porter, Louisville, Ky., Lisa L. Fleming, American Commercial Marine Service Co., Jeffersonville, Ind., for defendant-appellant.

Before WOOD, Jr.,* CUDAHY, and FLAUM, Circuit Judges.

ON PETITIONS FOR REHEARING

HARLINGTON WOOD, Jr., Circuit Judge.

The Civil Rights Act of 1991, which furthers the protections against discrimination

---

* Judge Harlington Wood, Jr. assumed senior status on January 16, 1992, which was after consideration of this case.

and harassment in the workplace, is undoubtedly an important step in protecting civil liberties. *See* Civil Rights Act of 1991, Pub.L. No. 102–166; § 102, 105 Stat. 1071 (U.S.C.S., Adv. Legis. Serv., Lawyers, Coop. Pub. Co.). Today this court is faced with the difficult task of deciphering to what extent the Civil Rights Act of 1991 is applicable to this case which was pending on appeal during its enactment.

## I.

### BACKGROUND

This case was first filed in 1977. In *Mozee v. Jeffboat, Inc.*, 746 F.2d 365 (7th Cir.1984) ("*Mozee I*"), we reversed a district court decision because the factual findings "were insufficient to permit meaningful appellate review." *Mozee I,* 746 F.2d at 367. Afterward, the district court issued several opinions on liability. In *Mozee v. American Commercial Marine Service Co.*, 940 F.2d 1036 (7th Cir.1991) ("*Mozee II*"), this court accepted an interlocutory appeal in which defendant American Commercial Marine Service Company, Jeffboat Division ("Jeffboat"), contested liability findings in a civil rights suit brought under Title VII and Section 1981 of the 1964 Civil Rights Act.

This court issued *Mozee II* on August 14, 1991. In that decision we reversed both the individual plaintiffs' and the class-wide claims under Section 1981; we affirmed the plaintiffs' individual claims for violation of Title VII; we affirmed the class-wide Title VII claims based on Jeffboat's promotion practices; and we vacated and remanded the trial court's determinations with regard to the class-wide Title VII claims based on Jeffboat's discipline instructions. *Mozee II,* 940 F.2d at 1055.

On August 27, 1991, Jeffboat filed a petition for rehearing, and on August 28, 1991, the plaintiffs filed a petition for rehearing. While these petitions for rehearing were pending before this court, Congress passed the Civil Rights Act of 1991 ("1991 Civil Rights Act" or "1991 Act"). We asked the

parties to file supplemental briefs discussing the possible applicability of the 1991 Civil Rights Act to this case. The plaintiffs filed their supplemental reply brief, the last of the supplemental briefs, on January 2, 1992. This supplemental decision discusses the extent to which the 1991 Civil Rights Act applies to the parties before this court.

The question of retroactivity in this case is two-fold. Our first level of inquiry is whether the 1991 Act applies in a manner that will change our decision in *Mozee II.* In other words, the first question is whether the 1991 Act applies retroactively on appeal. The second level of inquiry involves the applicability of the 1991 Act on remand. In *Mozee II* we vacated and remanded in part some of the district court's conclusions under Title VII. Now, in order to provide the district court with adequate guidance on remand, we must also consider to what extent the 1991 Civil Rights Act will apply to the issues remanded in *Mozee II.*

The plaintiffs assert in their supplemental briefs that the entire 1991 Act applies retroactively to this case. Jeffboat, on the other hand, argues that the entire 1991 Act is not applicable because the Act should only be applied prospectively. Neither side addresses whether the retroactive or prospective application of the provisions on remand should differ from the application on appeal.

The plaintiffs point to the following provisions of the 1991 Civil Rights Act as potentially applicable to this case: (1) Section 101(b), which expands the definition of what constitutes the making and enforcement of a contract for Section 1981 claims; (2) Sections 104 and 105, which pertain to the business necessity defense for disparate impact cases under Title VII; (3) Section 102, which makes compensatory and punitive damages available for intentional discrimination claims under Title VII; (4) Section 102(c), which pertains to the availability of a jury trial under Title VII.[1] *See* Pub.L. No. 102–166; 105 Stat. 1071.

---

1. Plaintiffs in their supplemental brief, however, seem to have conceded that their earlier

waiver of a jury trial under Section 1981 also

For the reasons explained below, we hold that the provisions of the 1991 Act apply prospectively on appeal. Likewise, the district court should not apply the 1991 Civil Rights Act when considering the issues remanded in *Mozee II.*

## II.

## ANALYSIS

### A. *Congressional Intent*

When congressional intent is clear as to the issue of prospective versus retroactive application, then this intent controls. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 838, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). However, whether Congress intended prospective or retroactive application of the 1991 Civil Rights Act cannot be deciphered from either the language of the statute or from the legislative history.

Numerous courts have addressed the issue of whether the 1991 Civil Rights Act applies retroactively to pending cases. The courts have various views on the issue of legislative intent. *For example, compare Fray v. The Omaha World Herald Co.,* 960 F.2d 1370, 1378 (8th Cir.1992) (legislative history indicates an intent to apply the Act prospectively); *Vogel v. Cincinnati,* 959 F.2d 594, 597 (6th Cir.1992) (no clear legislative intent can be deciphered from the statutory language or legislative history); *High v. Broadway Ind., Inc.,* 1992 WL 33860, *1, 1992 U.S.Dist. LEXIS 446, *1 (W.D.Mo. Jan. 7, 1992) (same); *Hansel v. Public Serv. Co.,* 778 F.Supp. 1126, 1136 (D.Colo.1991) (same); *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302, 1306 (N.D.Cal.1992) (statute's language evinces a legislative intent to apply the 1991 Civil Rights Act retroactively to pending cases); *Stevens v. Mann,* 57 Fair Emp.Prac.Cas. 1290, 1291, 1992 WL 101764 (S.D.Tex.1992) (1991 Civil Rights Act's language and legislative history indicate a congressional intent *not* to retroactively apply its provisions). Even in face of these divergent opinions with regard to whether the language or the legislative history indicates a

clear intent on this issue, both the plaintiffs and Jeffboat argue the legislative intent is clear, and, of course, both offer diametrically opposed interpretations of this so-called "clear" legislative intent.

President Bush signed the 1991 Civil Rights Act into law on November 21, 1991. Section 402(a) of the 1991 Civil Rights Act provides: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Pub.L. No. 102–166, § 402(a), 105 Stat. 1071. The fact that the 1991 Act becomes effective on the date of enactment provides no guidance as to whether the Act applies to pending cases. Indeed, this clause is susceptible to several interpretations: it might mean that the 1991 Act applies to conduct which occurred after the enactment, it might mean that the Act applies to cases filed after the enactment, it might mean that the Act applies to all proceedings beginning after the enactment, it might mean that the Act's provisions apply to all pending cases at any stage of the proceedings, or it might mean that the Act's procedural provisions apply to proceedings begun after enactment and the substantive provisions apply to conduct that occurs after the enactment. Considering this array of possible interpretations, Section 402(a) provides no guidance as to whether Congress intended the Act to apply prospectively or retroactively to cases pending on appeal or cases remanded to the district court.

The plaintiffs argue, however, that the 1991 Act as a whole indicates that Congress intended a retroactive application of the statute. As support for this argument the plaintiffs point to Section 402(b) of the Act, which states, "Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983." Pub.L. No. 102–166, § 402(b), 105 Stat. 1071. Plaintiffs argue that because this provision specifically excepts a special

constitutes a waiver of this newly enacted jury trial provision.

category of cases from retroactive application, this implies that Congress intended the remainder of the Act to apply retroactively. However, it is fairly clear from the legislative history that this exception was placed in the statute to ensure that the Act's provisions would not apply to the parties in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), a disparate impact case in litigation for approximately twenty-five years.[2] Therefore, Section 402(b) is nothing more than a clear assurance that courts would not apply the 1991 Act to the *Wards Cove* litigation regardless of how the courts might eventually construe the 1991 Act's applicability to pending cases.

Plaintiffs also point to Section 109(c) which specifically states that the section's provisions "shall not apply with respect to conduct occurring before the date of the enactment of this Act." Pub.L. No. 102–166, § 109(c), 105 Stat. 1071. Again, however, this language can be interpreted as an extra assurance that this Section's provisions will only apply to post-enactment conduct regardless of how the court eventually applies the Act's other provisions. In other words, Congress may have intended and envisioned that under the then-current judicial precedent courts would construe the Act in a manner that would require only a prospective application, but Congress, realizing that court interpretation may change over time, may have wanted to ensure that judicial interpretation would not alter the prospective application of the Act in these two circumstances.

In sum, Section 402(a)'s language is hopelessly ambiguous as to the issue of whether Congress intended the 1991 Civil Rights Act to apply retroactively to pending cases. And, although Sections 402(b) and 109(c) are explicitly prospective, the language is not sufficiently probative of

congressional intent to suggest that Congress intended a retroactive application of the remainder of the Act. Consequently, we cannot divine from the Act's language whether Congress intended the Act to apply retroactively to pending cases.

Jeffboat contends, however, that the legislative history indicates a clear congressional intent not to apply the Act retroactively to pending cases. As support for this argument, Jeffboat first points to the differing language in the 1991 Civil Rights Act and the vetoed 1990 Civil Rights proposal. The 1990 proposal contains explicit language that would have required courts to apply many of its provisions to cases pending at the time of its enactment. S. 2104, § 15(a), 101st Cong., 2d Sess. (1990), 136 Cong.Rec. H. 9554 (daily ed. Oct. 12, 1990). As Jeffboat argues in its supplemental brief, the fact that Congress failed to include this explicit language in the 1991 Civil Rights Act, arguably indicates that Congress intended a prospective application of the 1991 Act. However, this argument is negated by the fact that Congress did not adopt the Bush Administration's proposed bill which, in contrast, contained explicitly prospective language.[3]

Jeffboat also points to statements of several members of Congress in order to bolster its argument that the legislative history indicates a clear congressional intent to prospectively apply the Act, not to retroactively apply the Act to pending cases. It is difficult to decipher congressional intent from the statements of different members of Congress. Each member of Congress may vote on a piece of legislation for a different reason, and each may anticipate that the courts will construe the statute's language in a different manner. *Perera v. Siegel Trading Co.*, 951 F.2d 780, 784 (7th Cir.1992). As such, it is often difficult to decipher one uniform intent from such iso-

---

**2.** *See* 137 Cong.Rec. S 15478 (daily ed. Oct. 30, 1991) (statement of Senator Dole) ("At the request of the Senators from Alaska, section [402(b)] specifically points out that nothing in the Act will apply retroactively to the Wards Cove Packing Company, an Alaska company that spent 24 years defending against a disparate impact challenge.").

**3.** Section 14 of the Bush proposal provides:

This Act and the amendments made by this Act shall take effect upon enactment. The amendments made by this Act shall not apply to any claim arising before the effective date of this Act.

H.R. 1375, 102nd Cong., 1st Sess. (1991).

lated statements. This difficulty in deciphering intent from legislative history is evident in this case because, as the plaintiffs have correctly indicated, the legislative history contains statements that both favor and disfavor the retroactive application of the 1991 Civil Rights Act to pending cases. One such example of contradictory statements of intent can be seen by comparing Senator Kennedy's indication that the 1991 Civil Rights Act would be retroactively applied to pending cases under judicial precedent, 137 Cong.Rec. S 15485 (daily ed. Oct. 30, 1991) to Senator Danforth's indication that the Act would be prospectively applied under Supreme Court precedent, *id.* at S 15483.

■ A clear indication of congressional intent cannot be deciphered from the legislative history or the 1991 Act's language. Without a clear indication of congressional intent in either the language of the 1991 Civil Rights Act or in the Act's legislative history, we must turn to judicially derived rules of construction in order to resolve this ambiguity.

B. *Resolving Conflicting Supreme Court Precedent*

The Supreme Court, until its 1968 decision in *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1968), followed the general presumption that statutes were to apply prospectively unless the statute expressly provided otherwise. *See Bonjorno*, 494 U.S. at 842, 110 S.Ct. at 1579 (Scalia, J., concurring). However, in *Thorpe* the Supreme Court stated that the presumption runs the other way. *Thorpe*, 393 U.S. at 281, 89 S.Ct. at 525. The *Thorpe* decision reached this conclusion without discussing its deviation from a long line of precedent. *See Bonjorno*, 494 U.S. at 845, 110 S.Ct. at 1581 (Scalia, J. concurring). Then in 1974, the Supreme Court reaffirmed and, possibly, expanded *Thorpe* in *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In *Bradley* the Supreme Court stated that the general rule requires courts who are faced with new statutory provisions to apply the law at the

time of the decision. *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016. Accordingly, *Bradley* retroactively applied a newly enacted statute regarding attorney fees.

*Bradley*, however, is not the Supreme Court's last statement on this issue. Instead, the Court has rendered numerous decisions since *Bradley*, some of which seem to rely on the *Thorpe–Bradley* presumption that statutes apply retroactively to pending cases and some of which state and rely on the historical presumption that statutes apply prospectively unless the statute expressly provides otherwise. Below ar a few examples of the Supreme Court's varied post-*Bradley* opinions.

In *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Court stated, "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *Security Industrial Bank*, 459 U.S. at 79, 103 S.Ct. at 413. Then three years later in *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), the Supreme Court based its analysis on the *Thorpe–Bradley* presumption of retroactive application, but then went on to hold that the facts in that case were excepted from the *Thorpe–Bradley* rule. *Bennett*, 470 U.S. at 638–40, 105 S.Ct. at 1559–60. Then in 1988 the Supreme Court again shifted gears in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). In *Bowen* the Supreme Court used strong language indicating that courts should generally presume that statutes apply prospectively: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen*, 488 U.S. at 208, 109 S.Ct. at 471. Then in 1989, in *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the Supreme Court made a passing reference to *Thorpe* because *Thorpe* offered legal support for the parties' concession that newly enacted regulations applied in that case. *Von Raab*,

489 U.S. at 661–62, n. 1, 109 S.Ct. at 1388–89 n. 1.

Jeffboat argues that the Supreme Court's decision in *Bowen* indicates an intent to overrule the *Thorpe–Bradley* line of cases. We, on the other hand, conclude that rather than overruling the *Thorpe–Bradley* line of cases, the Supreme Court has left us with two seemingly contradictory lines of cases—a conclusion endorsed by the Court of Appeals for the Sixth and Eighth Circuits. *Vogel*, 959 F.2d at 597–598; *Fray*, 960 F.2d at 1370, 1374–75. Moreover, several factors support this reading of Supreme Court precedent. First, the fact that *Von Raab*—a post-*Bowen* decision—relies on *Thorpe* strongly suggests that *Bowen* did not overrule the *Thorpe–Bradley* line of cases. Second, *Bowen* involved an agency's authority to promulgate rules with retroactive effect in the absence of express congressional authority. *Bowen*, 488 U.S. at 208, 109 S.Ct. at 471. Therefore, *Bowen*, which did not even mention the *Thorpe–Bradley* rule, is not directly applicable to cases where courts are asked to decipher the prospective versus retroactive application of congressional statutes to pending cases. Third, the *Bonjorno* opinion indicates that the Court has not overruled the *Thorpe–Bradley* line of cases. In that case the majority opinion merely recognizes an "apparent tension" between these lines of cases. *Bonjorno*, 494 U.S. at 837, 110 S.Ct. at 1577. The majority did not attempt to reconcile this tension because it determined that the statute expressed a clear intent not to apply the relevant provision to judgments entered before its effective date. Justice Scalia, although joining in the majority's interpretation of statutory intent, wrote a concurrence where he urged the Court to reconcile the conflicting lines of Supreme Court precedent by overruling the *Thorpe–Bradley* line of cases, *id.* at 841, 110 S.Ct. at 1579, whereas the four dissenting Justices seemed to rely on the *Thorpe–Bradley* rule in their analysis. *Id.* at 866–69, 110 S.Ct. at 1592–94. Apparently, Jeffboat would have us believe the fact that the Supreme Court overruled the *Thorpe–Bradley* line of cases escaped these four dissenting Justices in *Bonjorno* and the majority of the Court in *Von Raab*.

The Supreme Court emphasized in *Rodriguez de Quijas v. Shearson/American Express*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), that it is not within the province of the court of appeals to determine when Supreme Court decisions in one line of cases effectively overrule Supreme Court decisions in another line of cases. *Rodriguez*, 490 U.S. at 484, 109 S.Ct. at 1921. Accordingly, we are left with the difficult task of reconciling the *Thorpe–Bradley* and *Bowen* lines of cases in a manner that comports with the policies underlying the need for prospective versus retroactive application.

In order to reconcile these cases we must first decide which line of cases embodies the general rule of construction and which line of cases has more limited applicability. Unfortunately, this court's opinions do not offer much guidance on this issue. *Compare Littlefield v. McGuffey*, 954 F.2d 1337, 1345 (7th Cir.1992) (relying on *Bradley* to apply a statute removing the cap on punitive damages—this statute was enacted before the case went to trial); *Federal Deposit Ins. Corp. v. Wright*, 942 F.2d 1089, 1095–97 (7th Cir.1991) (relied on *Bradley* when applying a statutory rule of estoppel which was enacted before trial); *Orrego v. 833 West Buena Joint Venture*, 943 F.2d 730, 735 (7th Cir.1991) (relied on *Bowen* in refusing to retroactively apply a statute limiting the ability to prepay loans from the Department of Housing and Urban Development).

As Justice Scalia noted in his concurrence in *Bonjorno*, *Bowen*'s presumption of prospective application is a rule rooted in history and tradition. *Bonjorno*, 494 U.S. at 855, 110 S.Ct. at 1586 (Scalia, J., concurring). Moreover, Justice Scalia indicates that the presumption of prospective application is grounded in notions of fairness because parties should only be held accountable for the laws at the time of their conduct. *Id.* Considering that the *Bowen* presumption of prospective application is the historical rule of construction, and considering that the *Bowen* decision contains

strong language reaffirming this historical rule of construction, we will assume that *Bowen* states the general rule. Therefore, we will only apply the *Thorpe–Bradley* presumption of retroactive application in a narrow category of cases.

The difficult issue now becomes what are the *narrow circumstances* in which the *Thorpe–Bradley* rule applies. The plaintiffs suggest that the *Thorpe–Bradley* rule should apply to cases pending on appeal and that *Bowen*'s presumption of prospective application should apply to cases pending before the trial courts. However, such a distinction has no basis in policy. *See Bonjorno*, 494 U.S. at 854, 110 S.Ct. at 1586 (Scalia, J., concurring). In fact, such a distinction, if anything, seems backwards. It seems unlikely that the Supreme Court would require parties to comply with new laws on appeal which could possibly require an entirely new proceeding, but that parties at the earlier stages of litigation would not be bound by this new law. The doubtful nature of such a distinction is especially apparent in this case where the parties before this court have been in litigation for fifteen years. It seems remarkable that after fifteen years the parties before us would need to reinitiate proceedings under this new law, while other parties before the district court for only months would not be required to abide by such laws. Moreover, the application of such a distinction would be even more remarkable in this case because we would apply the new law to this interlocutory appeal, but the district court would apply the old law to the issues still pending before it. Clearly, the *Thorpe–Bradley* line of cases must be reconciled on some other basis.

*Bennett,* a 1985 Supreme Court decision, sheds some light on the problem of reconciling these conflicting presumptions. In that case the Court refused to apply the *Thorpe–Bradley* line of cases and, instead, presumed prospective application. In reaching this conclusion, the Court indicated that the *Thorpe–Bradley* rule by its own terms does not apply when the retroactive application of a statute " 'would infringe upon or deprive a person of a right that had matured or become uncondition-

al.' " *Bennett,* 470 U.S. at 639, 105 S.Ct. at 1560 (quoting *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020). The *Bennett* decision further indicates that its refusal to apply the *Bradley* presumption "comports with another venerable rule of statutory interpretation, i.e., that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Bennett,* 470 U.S. at 639, 105 S.Ct. at 1560 (citing *Security Industrial Bank,* 459 U.S. at 79, 103 S.Ct. at 413).

■ *Bennett* involved the application of a new rule that would affect New Jersey's need to repay federal grants. *Bennett,* 470 U.S. at 636, 105 S.Ct. at 1558. Therefore, the *Bennett* decision could be read narrowly to mean that the *Thorpe–Bradley* line of cases does not apply to statutory provisions that affect matured property-like interests. However, considering that the *Bowen* presumption of prospective application is the general rule, we conclude that *Bennett,* instead, stands for the proposition that statutory provisions impacting substantive rights and obligations will not be retroactively applied.

Not only is this broad reading of *Bennett* more consistent with the Supreme Court's holding in *Bowen,* this reading of *Bennett* also seems to comport with the policies underlying the choices between retroactive and prospective application. As we stated above, one of the policies embodied in the need for prospective application is that it is unfair to hold private parties accountable for rules which were not in effect at the time in which the parties' relevant conduct took place. *See Bonjorno,* 494 U.S. at 855, 110 S.Ct. at 1586 (Scalia, J., concurring). As such, the better and more fair rule is to hold parties accountable for only those acts that were in violation of the law at the time the acts were performed. *Bennett* assures that parties are accountable solely for the substantive law in effect at the time of their relevant conduct.

### C. *Retroactive versus Prospective Application on Appeal*

The parties have pointed to several provisions of the 1991 Civil Rights Act which

are potentially applicable to either the re-evaluation of our appellate decision in *Mozee II* and/or the remand of several of the district court's Title VII findings. Some of these provisions are apparently substantive provisions, some are apparently procedural provisions, and some are clearly damage provisions. *See* Pub.L. No. 102–166, §§ 101, 102, 104, 105, 105 Stat. 1071. Having determined that the *Bowen* presumption of prospective application will apply to substantive provisions at any stage of the proceeding, we now need to address whether this means by implication that the *Thorpe–Bradley* rule of retroactive application applies to these potentially applicable procedural and damage provisions. We first address the issue of whether *Thorpe–Bradley* presumption of retroactive application applies to procedural and damage provisions on appeal.

■ Granted, *Thorpe* involved the retroactive application of a procedural rule on appeal. Nevertheless, when looking at the policies underlying the general presumption of prospective application, we conclude that *Thorpe* does not require appellate courts to retroactively apply procedural provisions, as a general rule, on appeal. Instead, as we explain below, *Thorpe* involved unique circumstances. Therefore, the general rule is that the *Bowen* presumption of prospective application applies to procedural provisions on appeal.

The procedural right at stake in *Thorpe* was very different from a procedural right at stake in most trials. In *Thorpe* a local agency evicted a tenant in a federally assisted housing project. The local housing authority brought summary eviction proceedings without explanation and without providing the tenant any process. *Thorpe*, 393 U.S. at 269–71, 89 S.Ct. at 519–20. While the case was on appeal, HUD promulgated a rule requiring local agencies to provide notice and an opportunity for explanation before eviction. The *Thorpe* Court held that the general presumption is that an appellate court applies the law at the time of decision. *Id.* at 281, 89 S.Ct. at 525. Following this presumption, the *Thorpe* Court held that the HUD rule ap-plied retroactively, and, therefore, the local agency had to give the process required by the rule.

In *Thorpe* the Supreme Court merely forced a government agency to follow procedures after the Court recognized that some procedure was necessary to avoid constitutional due process problems. *Id.* at 283, 89 S.Ct. at 527. Another very important distinction between retroactive application of the procedures in *Thorpe* and the retroactive application of procedural provisions in the 1991 Civil Rights Act on appeal is that in *Thorpe* there was no process given to the parties in the first instance. Therefore, in *Thorpe* the retroactive application of the rules did not require the agency to go through the expense of conducting two proceedings. That is, *Thorpe* did not involve a situation where the agency had to spend money redoing a procedure that had already been rendered. On the other hand, in cases like that before this court, where the parties have already litigated the issues on appeal, the retroactive application of a procedural provision could require a new trial and could, therefore, require double expenses. It appears that in most appeals such a retrial would rise to the level of manifest injustice, thereby rendering the *Thorpe–Bradley* rule inapplicable. *See Bradley*, 416 U.S. at 716, 94 S.Ct. at 2018 (courts should not apply a statute retroactively if such an application will result in manifest injustice). This injustice is particularly apparent in a case such as the one before us today where the parties have been in litigation for fifteen years. Accordingly, we conclude that the general rule of *Bowen* applies when a statute changes the trial procedural rules once the matter is on appeal.

*Bradley*, like *Thorpe*, has limited application to cases on appeal. *Bradley* was a civil rights suit brought under the Civil Rights Act of 1871. *Id.* at 699, 94 S.Ct. at 2010. In that case, a statute providing for attorney fees was passed while the case was pending before the court of appeals. *Id.* at 709, 94 S.Ct. at 2015. The Supreme Court held that the court of appeals should have applied this newly enacted provision to allow the plaintiffs to recover for ex-

penses incurred before the statute's effective date. *Id.* at 721, 94 S.Ct. at 2021.

In *Bradley* the court was merely confirming a prior district court order that allowed attorney fees under the private attorney general theory. *Id.* at 708, 94 S.Ct. at 2014. Accordingly, the attorney fee provision that was applied to the parties in *Bradley* arguably constituted a mere codification of the law as it existed before its enactment. Moreover, considering that the district judge had already calculated the amount of allowable attorney fees up to a certain date, the application of this statute did not require the parties to relitigate the issue of what constituted reasonable attorney fees. This meant that the danger of requiring parties to redo damage proceedings once the hearings were completed and the case reached appeal was not at issue in *Bradley.* Moreover, considering that attorney fee provisions are not as closely intertwined with the issue of liability as are other types of damage provisions, the application of this provision on appeal did not run the risk of requiring the trial court to reassess liability determinations.

*Bradley* was a unique case where the application of an attorney fee provision on appeal did not require the parties to redo prior proceedings. *Bradley*'s precedent on appeal will, therefore, apply only to cases with a factual backdrop similar to that in *Bradley.* This means that on appeal *Bradley*, at the most, applies when evaluating damage provisions that do not affect substantive rights, and arguably applies only to attorney fee provisions. Accordingly, among the provisions of the 1991 Act that the parties point to as relevant to this

litigation, only Section 102, which contains provisions regarding the availability of compensatory and punitive damages under Title VII, is even arguably applicable under *Bradley.* Nevertheless, *Bradley* does not require this court to change our determinations in *Mozee II* because no damage issues were before us in that interlocutory appeal. In other words, a retroactive application of Section 102's damage provisions on appeal would not change our decision in *Mozee II.*

■ As Justice Scalia noted in his concurrence in *Bonjorno,* the other cases in which the Supreme Court has relied on the *Thorpe–Bradley* presumption when applying newly enacted statutes to pending cases involved the application of judicial decisions and not statutory provisions; the application of statutes that were expressly retroactive; or the use of a new statute to regulate future conduct, which is actually a prospective, rather than a retroactive, application of the statute. *Bonjorno,* 494 U.S. at 852, 110 S.Ct. at 1585 (Scalia, J., concurring). Therefore, these later cases do not change our determination that *Bowen*'s general presumption of prospective application is the general rule on appeal and that the *Thorpe–Bradley* presumption of retroactive application only applies in very limited circumstances on appeal.

Following *Bowen*'s presumption of prospective application, we will not retroactively apply the provisions of the 1991 Civil Rights Act to change our disposition of the issues that were before this court in *Mozee II.*[4] *See Vogel,* 959 F.2d at 598 (read *Bradley* narrowly and therefore refused to retroactively apply the 1991 Civil Rights Act on appeal).

**4.** The dissent argues that it is irrational and unjust to mechanically apply rules of construction to the facts of this case. We agree that the rules of construction generally requiring retroactive application of judicial decisions and prospective application of statutory provisions have lead to an odd result in this case. The odd result being that Section 101(b) of the 1991 Civil Rights Act mirrors the manner in which courts prior to the Supreme Court decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), construed Section 1981 claims under the former Civil Rights Act—a construction which prevailed at the time of the defendant's relevant conduct and

at the time of trial. Although unfortunate, we do not agree that this result is either unjust or irrational. First, the dissent ignores the fact that the Supreme Court opinion in *Patterson* indicates that the pre-*Patterson* interpretation of the former Act was simply wrong. Second, the dissent's approach comes down to a balancing of equities—an approach which is difficult to apply with any certainty. Indeed, it is far from clear that the equities in this case favor a retroactive application of the 1991 Act. We must remember that this case has been in litigation for fifteen years. A remand under a new statute after fifteen years of litigation seems anything but just.

## D. Application of the 1991 Civil Rights Act on Remand

■ As we stated above, courts should not retroactively apply statutory provisions that define the scope of a party's substantive rights and obligations at any stage of the proceedings. The rationale behind this conclusion is that it is unfair to make persons accountable for acts that did not violate statutory laws when they were performed. This means that any such provisions defining a party's substantive rights should not be retroactively applied on remand. The next question becomes whether the general presumption of prospective application also applies to damage or procedural provisions relevant to the issues remanded in *Mozee II.*

■ The trial court's application of the trial procedure in effect at the time of the trial does not seem to raise the same concerns as the retroactive application of provisions defining a party's substantive rights and obligations.[5] That is, procedural rules generally regulate trial proceedings, and these rules are not generally targeted at proscribing unwanted conduct. Therefore, it does not seem unfair to require parties to comply with the rules of procedure applicable at the time in which they begin a new trial proceeding, especially considering that most persons and entities are not likely to conform their conduct in light of a slight change in the procedure that will be rendered if they violate the law.

Likewise, the policy underlying the *Bennett* decision is not implicated when apply-ing the damage provisions in effect at the time in which proceedings are initiated. Granted, the greater an award of damages for proscribed, unwanted conduct, the less likely that persons and entities will perform this unwanted conduct. Nonetheless, the traditional theory underlying at least compensatory damages is that they are meant to compensate parties for their losses. *See* Dan B. Dobbs, Remedies § 3.1 (1973). Because society's valuation of a victim's losses understandably changes over time, it does not seem unfair to force litigating parties to comply with the more recent statutory changes with regard to damages.

Moreover, when a trial court begins an entirely new proceeding, there is no danger that an application of the new statutory provisions will require duplicative proceedings. Therefore, one of the primary reasons that appellate courts should not apply newly enacted procedural and damage provisions does not apply when a trial court *begins* new proceedings.

For the above reasons, it is *arguable* that courts should apply the procedural and damage provisions in effect at the time of the trial. *See Lussier v. Dugger,* 904 F.2d 661, 665 (11th Cir.1990) (quoting *United States v. Vanella,* 619 F.2d 384, 386 (5th Cir.1980) (" 'statutory changes that are procedural or remedial in nature apply retroactively.' ")). Indeed, this court's recent decisions in *Wright* and *Littlefield* in which this court applied the *Thorpe–Bradley* presumption of retroactive application may arguably be explained on this basis.[6]

---

5. Considering that procedural rules are aimed at regulating trial proceedings and not the parties' underlying conduct that gave rise to the trial, it is arguable that even a prospective application of a procedural rule requires the trial court to apply the procedural law in effect at the beginning of the trial. In other words, the requirement that the trial court apply the procedural law at the time of the trial is not necessarily a rule that requires a retroactive application of a statute. *See Bonjorno,* 494 U.S. at 857–58, n. 3, 110 S.Ct. at 1587–88, n. 3 (Scalia, J., concurring) (even under a purely prospective application of a statute it is not always clear when a statute should be applied to parties because whether or not the statute should apply "depends upon what one considers to be the determinative

event by which retroactivity or prospectivity is to be calculated.").

6. In *Wright* this court applied the *Bradley* presumption to a statute enacted *before trial* when deciding whether or not to follow the seemingly procedural statutory requirements that estopped parties from presenting certain types of evidence to the court. *Wright,* 942 F.2d at 1095–97.

In *Littlefield* this court applied *Bradley* when applying statutory changes which resulted in the removal of a cap on punitive damages. *Littlefield,* 954 F.2d at 1345. These statutory changes were enacted before trial. *Id.* Granted, punitive damage provisions, which are aimed at deterring future conduct, arguably impact substantive rights. Nevertheless, a change in the

Nevertheless, considering that *Bowen* is the general rule of construction, there is a flip side to the argument that courts should apply the procedural and damage provisions in effect at the beginning of proceedings. In short, it may cause undue confusion to require a trial court to conduct a provision-by-provision analysis of an act in order to distinguish between those provisions regulating procedure and damages and those provisions that affect substantive rights and obligations. In fact, the Court of Appeals for the Sixth Circuit's decision in *Vogel* apparently stands for the proposition that because some of the 1991 Act's provisions affect substantive rights, the entire Act should be prospectively applied. *Vogel*, 959 F.2d at 597. This position is not without merit.

In any event, we need not decide what procedure and damage provisions a trial court should apply at the beginning of a trial in order to assess the applicability of the 1991 Civil Rights Act to the issues remanded in *Mozee II*. Even if a trial court should apply the procedural and damage law in effect when it initiates an entirely new proceeding, this does not mean that the district court in this case should apply the 1991 Civil Rights Act's procedural and damage provisions on remand. This is because *Mozee II* was an interlocutory appeal where this court affirmed in part, vacated and remanded in part, and reversed in part. Therefore, the remand in *Mozee II* does not require an entirely new proceeding. Instead, the remand requires the district court to reconsider some of the plaintiffs' numerous theories for relief under Title VII. As such, the application of the new procedural and damage provisions to the issues on remand would mean that the remanded Title VII claims would be governed by different law than those claims which were affirmed in *Mozee II*. This result would be both inequitable and con-

fusing. Considering that the interlocutory remand in *Mozee II* will not initiate an entirely new proceeding, the district court should not apply any of the 1991 Civil Rights Act's provisions on remand.

## III.

## CONCLUSION

After carefully considering the supplemental briefs on the issue of retroactivity, this panel finds it unnecessary to grant a rehearing on this issue. Furthermore, we find no other basis on which we need to grant rehearing. This panel, therefore, denies the petitions for rehearing. Moreover, for the above reasons, we reaffirm our decision in *Mozee II*, and we direct the district court to proceed on remand pursuant to the instructions given in *Mozee II* and this opinion.

CUDAHY, Circuit Judge, dissenting.

The majority has done a thorough, but, in my view, abstract and mechanical, job in analyzing the impact of the Civil Rights Act of 1991. The specific facts of the real-life case before us seem to me to cry out for a different solution. The joint presumptions that court decisions operate retroactively while legislation operates prospectively have combined here to produce a result that is neither rational nor just.

The Civil Rights Act of 1991 (insofar as it is relevant here) overrules a key Supreme Court decision—*Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). But all the events giving rise to liability in the case before us—acts of intentional racial discrimination allegedly pervading the employment relationship—occurred many years before *Patterson* was rendered. Even the lawsuit was brought long before *Patterson* was decided.

amount of recoverable punitive damages is arguably different than the enactment of a statute which initially provides for punitive damages.

Moreover, both *Littlefield* and *Wright* might also be distinguished on the basis that the result in those cases would have been the same without the application of the statute. For example, in *Wright* this court emphasized that the statute

at issue was essentially codifying the pre-existing common law. *Wright*, 942 F.2d at 1096–97. Likewise, in *Littlefield*, it appears that the result would have been the same without a retroactive application of the statute because in that case another controlling statute allowed for punitive damages without a cap. *Littlefield*, 954 F.2d at 1345.

*Patterson* became the law for a short time as this case was inching through a thicket of litigation, and the opinion in this case as presently written assumes that it is still in effect. Now, however, Congress has chosen to erase *Patterson* from the books. So, as I write, the law is the same as that prevailing at the time the discriminatory events took place and at the time the lawsuit was filed. In other words, *Patterson* was the effective law of the land at no time that is relevant to the disposition of this case. No one relied on it when liability was incurred in this case, nor can we rely on it now that it has been overruled by Congress.

In addition to the anomalous result it produces in this unusual case, the majority's opinion has a number of defects on its own terms. For example, the majority admits that the explicitly prospective language of sections 402(b) and 109(c) suggests retroactivity for the rest of the Act, but finds that language "not sufficiently probative of congressional intent." *Ante* at 933. At the same time, the majority also admits that the legislative history is generally opaque. *Ante* at 934. Although I agree that section 402(b) is clearly surplusage, there is no reason to treat section 109(c) similarly. Given the general lack of information, we should give effect to the only direction Congress has provided: if section 109 is to apply prospectively, the rest of the Act is retroactive. *See Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1303 (N.D.Cal.1992) (plain language of Act supports retroactivity).

I also believe that the majority errs when it asserts that, among the provisions relevant to this litigation, only section 102, which provides for compensatory and punitive damages under Title VII, "is even arguably applicable under *Bradley*." *Ante* at 938. Although section 101 is phrased as a substantive ban on discrimination, its effect is to make the damage provisions of 42 U.S.C. § 1981 applicable to conduct that Title VII has always prohibited. Section 101 merely provides new remedies for old wrongs. Insofar as these new remedies include compensatory damages, section 101 appears to be the kind of "damage provi-

sion[ ] that do[es] not affect substantive rights" that may be presumed to be retroactive under *Bradley*. *Ante* at 938. Arguably, even under the majority's analysis, we should apply section 101 of the Act and reinstate the plaintiffs' claims under section 1981. *See Mozee II*, 940 F.2d at 1051–55. And these points certainly do not exhaust the catalog of exceptions that may be taken to the majority's approach. *See generally Mojica v. Gannett Co.*, 779 F.Supp. 94 (N.D.Ill.1991).

Whether we consider the facts of this case or the language of the Act, *Patterson* should not apply here, and the opinion in *Mozee II* should be revised in accordance with the law applied before *Patterson* was decided. Through a mechanical application of principles that are ill-fitting here, the majority has succeeded in applying rules of law not relied upon at the time of the discriminatory acts, not recognized when the lawsuit was brought and not in force now. This is substantially unjust to the plaintiffs and I respectfully dissent.