Greta L. HUTCHISON, Plaintiff,

v.

AMATEUR ELECTRONICS SUPPLY,
INC. and Terry Sterman,
Defendants.

No. 91–C–1377.

United States District Court,
E.D. Wisconsin.

Dec. 3, 1993.

Arthur Heitzer, Heitzer Law Office, Milwaukee, WI, for plaintiff.

John H. Lindquist, Steven B. Rynecki, von Briesen & Purtell, Milwaukee, WI and Daniel W. Stevens, Esser, Dietrich & Stevens, Menomonee Falls, WI, for defendants.

## DECISION AND ORDER

WARREN, Senior District Judge.

Before the Court is the plaintiff's Motion for a New Trial on the Issue of Damages pursuant to Federal Rule of Civil Procedure 59(a) ("Rule 59(a)") in the above-captioned matter. For the following reasons, this motion is denied.

## I. BACKGROUND

The plaintiff, Greta Hutchison, was employed as office manager at Amateur Electronics Supply, Inc. ("Amateur") through December of 1989, when she was terminated and replaced. On December 23, 1991, Ms. Hutchison brought the instant suit, claiming that Terry Sterman, the owner and president of Amateur during her time of employment, (1) discriminatorily terminated her on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., (2) discriminatorily terminated her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., (3) sexually harassed her in violation of Title VII, and (4) terminated her in retaliation for her opposition to his sexual harassment in violation of Title VII.

On September 3, 1993, the parties filed a Joint Pretrial Report with Proposed Jury Instructions pursuant to Local Rule 7.06. Included were proposed instructions for compensatory and punitive damages regarding Ms. Hutchison's Title VII claims. The Court permitted the compensatory damages, but not punitive damages, instructions to be presented to the jury.

■ A jury trial commenced in this case on September 13, 1993. On Friday, September 17, 1993, the jury returned a Special Verdict, finding for the plaintiff regarding her sexual harassment and retaliatory firing claims, dismissing her age discrimination and sex discrimination claims, and awarding her $80,000 in back pay, including fringe benefits. The jury awarded the plaintiff no front pay and no damages for emotional pain, suffering, inconvenience, or mental anguish. Finally, in response to Question No. 7, which was inadvertently included on the Special Verdict form [1], the jury indicated that the

---

1. Special Verdict Question No. 7 read as follows:

   "Do you find by a preponderance of the evidence that, even if the plaintiff's sex, age, or opposition to the defendant's employment practices was a motivating factor in the defendants' decision to fire her, they would have fired her anyway for just cause?"

   Such an instruction was proper under Title VII prior to the November 21, 1991 enactment of the Civil Rights Act of 1991 ("the 1991 Act"). Before that date, an employer who had terminated an employee based on a discriminatory motive was not liable under Title VII if it proved that a "legitimate reason, standing alone, would have induced it to make the same decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252, 109 S.Ct. 1775, 1792, 104 L.Ed.2d 268 (1989). *See also Germane v. Heckler*, 804 F.2d 366, 368 (7th Cir.1986) ("ultimate inquiry in a Title VII disparate treatment claim is whether a discriminatory intent was a 'but' for' cause of the adverse action"). "However, the Civil Rights Act of 1991 overrules *Price Waterhouse* on this point and makes an employment decision illegal if it was motivated at all by an illegitimate motive." *Pilditch v. Board of Educ. of the City of Chicago*, 3 F.3d 1113, 1118 (7th Cir.1993). Specifically, 42 U.S.C. § 2000e–2(m) now provides that "... an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

   At the September 15, 1993 jury instruction conference, the parties and the Court agreed that, because the Court intend to retroactively apply the compensatory damages provision (and, derivatively, jury trial provision) of the 1991 Act, *see infra* pages 625–27, *Price Waterhouse* did not apply regarding any "mixed motive" issues presented to the jury; therefore, a special verdict question asking whether the defendants would have nonetheless fired Ms. Hutchison for just cause despite any discriminatory motive was not appropriate. However, such a question was inadvertently included on the initial Special Verdict form as Question No. 7. Ms. Hutchison's attorney noticed this error prior to the charging of the jury and promptly notified the Court; we assured the parties that the error would be corrected on the final Special Verdict form submitted to the jury. However, due to what is best

defendants would not have fired Ms. Hutchison for "just cause" apart from any unlawful motive based on sex, age, or retaliation.[2]

## II. STANDARD OF REVIEW

Rule 59(a) provides as follows:

"A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."

Under Rule 59(b), such a motion must be served within ten days after the entry of judgment.

■ A Rule 59(a) Motion for a New Trial is "not merely intended to secure a forum for the relitigation of old matters or to afford the parties the opportunity to present the case under new theories; instead, the motion is a device properly used to correct manifest errors of law or fact or to present newly discovered evidence." *Rosera v. International Harvester Co.,* 109 F.R.D. 143, 149 (E.D.Wis.1986) (Warren, J.); *St. Clair v. Pipal,* 611 F.Supp. 911, 915 (E.D.Wis.1985) (Warren, J.). A Rule 59(a) motion should be granted if the Court determines, *inter alia,* that (1) the jury verdict is contrary to the clear weight of the evidence, (2) the damages are excessive, or (3) the trial was not fair to the moving party. *Scaggs v. Consolidated*

*Rail Corp.,* 6 F.3d 1290, 1293 (7th Cir.1993); *Walden v. Illinois Cent. Gulf R.R.,* 975 F.2d 361, 365 (7th Cir.1992); *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.,* 1993 WL 356930 at *1–2 (N.D.Ill. Sept. 14, 1993) (Williams, J.). It is within the discretion of this Court to grant or deny a new trial on the question of the adequacy of damages, *Etling v. Sander,* 447 F.2d 593, 594 (7th Cir.1971), and such a motion is properly granted if it will "effect substantial justice." *Rosera,* 109 F.R.D. at 148; *St. Clair,* 611 F.Supp. at 915. *See also Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); *Cole v. Bertsch Vending Co., Inc.,* 766 F.2d 327, 332 (7th Cir.1985); *Fort Howard Paper Co. v. Standard Havens, Inc.,* 119 F.R.D. 397, 407 (E.D.Wis.1988) (Warren, J.), *aff'd* 901 F.2d 1373 (7th Cir. 1990).

■ In deciding such a motion, the Court should "balance the need for prompt and efficient handling of litigation in federal courts against the attainment of a just resolution of the particular dispute at hand," *Rosera,* 109 F.R.D. at 143; *St. Clair,* 611 F.Supp. at 915, and must examine the jury verdict the light most favorable to the prevailing party. *See, e.g., Scaggs,* 6 F.3d at 1293; *M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1407 (7th Cir.1991); *Rockwell,* 1993 WL 356930 at *1–2. A new trial is never warranted simply because the jury could have reached a different result, *Continental Air Lines, Inc. v. Wagner–Morehouse, Inc.,* 401 F.2d 23, 30 (7th Cir.1968); *Cornelius v. La Croix,* 631 F.Supp. 610, 616 (E.D.Wis.1986) (Gordon, J.), and should not be awarded if a moving party cannot demonstrate that a miscarriage of justice will otherwise result. *Deppe v. Tripp,* 863 F.2d 1356, 1362 (7th Cir.1988); *United States Equal*

---

described as "mechanical difficulties," while the parties and the Court received the corrected final Special Verdict form, the jury nevertheless received the uncorrected initial Special Verdict form containing Question No. 7.

**2.** *Id.* After the jury returned its Special Verdict, the plaintiff's attorney promptly alerted the Court that the jury had, in fact, deliberated using the uncorrected initial Special Verdict form. After discussing the issue, the Court and the parties

agreed that, because the jury found no just cause for Mrs. Hutchison's termination in its response to Question No. 7, consideration of such issue had no effect on their liability or damages decisions, as the defendants would also have been liable under pre–1991 Act Title VII law as delineated in *Price Waterhouse. See infra* pages 618–24. Therefore, because such error was harmless, the Court accepted the jury verdict as properly deliberated pursuant to the 1991 Act. *See* 42 U.S.C. § 1981a.

*Employment Opportunity Comm'n v. AIC Sec. Investigations, Ltd.,* 1993 WL 427454, at *2 (N.D.Ill. Oct. 21, 1993).

## III. DISCUSSION

### A. LEGAL FRAMEWORK

#### 1. Retroactive Application of the Civil Rights Act of 1991 to Cases Pending Before District Courts:

Prior to the enactment of the Civil Rights Act of 1991 ("the 1991 Act"), an aggrieved party under Title VII was only entitled to seek equitable relief, and had no right to recover punitive or compensatory damages or to have factual issues resolved by a jury. *See, e.g., Mojica v. Gannett Co., Inc.,* 7 F.3d 552, 559 (7th Cir.1993). Under the 1991 Act, however, which became effective on November 21, 1991, a Title VII plaintiff who has suffered intentional discrimination and cannot recover under 42 U.S.C. § 1981 "may recover compensatory and punitive damages ... [and] may demand a trial by jury." 42 U.S.C. § 1981a(a-c). Not surprisingly, Title VII plaintiffs with actions filed both before and after the effective date of the 1991 Act sought to have its enhanced remedial provisions applied by district courts in their cases. Soon thereafter, the Seventh Circuit was forced to address the issue of retroactive application of the provisions of the 1991 Act to cases pending at various procedural stages.[3]

The Seventh Circuit initially discussed the applicability of the provisions of the 1991 Act to Title VII actions *pending on appeal* at the time of its enactment. In *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929, 936–38 (7th Cir.1992), the Seventh Circuit (1) found that provisions of 1991 Act which "define the scope of a party's substantive rights and obligations" should not be applied retroactively, and (2) withheld judgment on whether trial courts should retroac-

tively apply damage and procedural provisions of the 1991 Act to newly initiated proceedings. The higher court addressed the latter point in *Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225, 229–30 (7th Cir.1992), finding that provisions of the 1991 Act are generally "applicable only to conduct engaged in after the effective date in the act, *at least if the suit had been brought before the effective date* [emphasis added]." After *Luddington,* then, the remaining issue was the retroactive application of the 1991 Act to Title VII actions before district courts where suit was brought *after* the effective date of the 1991 Act.

In *Mojica,* the Seventh Circuit directly addressed the applicability of the 1991 Act to Title VII actions *pending before district courts* at the time of its enactment. *Mojica,* 7 F.3d at 554–55.[4] The plaintiff in *Mojica,* who filed her Title VII action prior to the effective date of the 1991 Act, went to trial after such date; the district court decided to apply the provisions of the 1991 Act retroactively at trial. *Id.* at 555. In finding that the district court should *not* have so applied the 1991 Act, the Seventh Circuit reasoned that, where Congressional intent is unclear, courts should "advance '[t]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place' ... [s]imply put, if the conduct took place before the statute's enactment, it is not covered; if after, it is covered." *Id.* at 558 (*citing, in part, Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 855, 110 S.Ct. 1570, 1586, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring)). As a result, although noting that "[i]n theory, a statute may include certain procedural or damage provisions which do not impact substantive rights, and therefore should apply to trials taking place after enactment," the Seventh Circuit held that the rule of non-retroactivity applies to provisions of the 1991 Act allowing for compensatory damages, punitive

---

**3.** "Retroactivity" simply means the application of a statute, judicial decision, or other authoritative enactment "to conduct that occurred before the [statute, enactment, or] decision was rendered." *E.E.O.C. v. Vucitech,* 842 F.2d 936, 941 (7th Cir.1988).

**4.** The Seventh Circuit also noted that the Supreme Court will ultimately decide the issue of retroactivity of the 1991 Act to cases pending before both district and appellate courts in *Landgraf v. USI Film Products, cert. granted,* —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993). *Mojica,* 7 F.3d at 557.

damages, and jury trials in Title VII claims. *Id.* at 557–59.

■ The reasoning employed by the Seventh Circuit in *Mojica* clearly dictates that district courts apply its holding in any Title VII cases where the allegedly discriminatory *conduct* occurred prior to the effective date of the 1991 Act. Although foreshadowed in *Mozee* and *Luddington*, *Mojica* was the Seventh Circuit's first clear indication to district court judges that compensatory damages, punitive damages, and jury trial provisions of the 1991 Act should not be applied retroactively by district court judges *in cases filed after such date*. *See, e.g., Dombeck v. Milwaukee Valve Co.*, 823 F.Supp. 1475 (W.D.Wis.1993) (Shabaz, J.) (applying compensatory damages, but not punitive damages, provision of 1991 Act retroactively to pre-effective date conduct in case filed after such date); *Housey v. Carini Lincoln–Mercury*, 817 F.Supp. 762 (E.D.Wis.1993) (Evans, C.J.) (applying all provisions of the 1991 Act retroactively to pre-effective date conduct in case filed after such date); *Bryant v. Northeast Illinois Regional Commuter R.R. Corp.*, 809 F.Supp. 584 (N.D.Ill.1992) (Marovich, J.) (refusing to apply compensatory damages, punitive damages, and jury trial provisions of the 1991 Act retroactively to pre-effective date conduct in case filed after such date); *Zakutansky v. Bionetics Corp.*, 806 F.Supp. 1362 (N.D.Ill.1992) (Shadur, J.) (refusing to apply any provisions of the 1991 Act retroactively to pre-effective date conduct in case filed after such date); *Redden v. Wal–Mart Stores, Inc.*, 806 F.Supp. 210 (N.D.Ind.1992) (Miller, J.) (refusing to apply any provisions of the 1991 Act retroactively to pre-effective date conduct in case filed after such date). *See also Housey v. Ed Witt's Venus Ford*, Case No. 92–C–605, 1993 WL 144683 (E.D.Wis.1993) (Randa, J.) (failing to apply compensatory and punitive damages provisions, and, derivatively, jury trial provision, of the 1991 Act retroactively to pre-effective date conduct in case filed after such date after acknowledging theoretical basis for applying jury trial provision).

### 2. Retroactive Application of Mojica to Cases Pending Before District Courts:

■ In *Mozee* and *Luddington*, the Seventh Circuit was forced to address what Justice Scalia termed in *Bonjorno* an "irreconcilable contradiction" in two lines of Supreme Court cases regarding the retrospective application by reviewing courts [5] of new *legislative enactments* absent Congressional guidance. *Bonjorno*, 494 U.S. at 841, 110 S.Ct. at 1579 (Scalia, J., concurring) (*comparing Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 715–16, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974) (finding that, where a statute providing for the award of attorney's fees was enacted while the district court's award of fees was pending on appeal, "a change in the law is [presumed] to be given effect in a pending case") and *Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969) (finding that, where a notice-of-eviction regulation was enacted by HUD while constitutional claims were pending on appeal, "the [presumptive] rule is that an appellate court must apply the [statutory] law in effect at the time it renders its decision") *with Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (finding that administrative agency could not promulgate legislative regulations retroactively as "retroactivity is not favored in the law ... [t]hus, congressional enactments and administrative rules will not [presumptively] be construed to have retroactive effect unless their language requires this result")). In *Mozee* and *Luddington*, the Seventh Circuit adopted *Bowen* as articulating the preferred rule that reviewing courts should presume non-retroactive application of newly-enacted statutes, thus limiting the applicability of the *Thorpe* and *Bradley* "exceptions" accordingly. *See Luddington*, 966 F.2d at 227–28; *Mozee*, 963 F.2d at 935–38. *See also Mojica*, 7 F.3d at 556.

---

**5.** Each of the cases cited in this section involves the retroactive application of a new legislative enactment or judicial decision in a case pending before an appellate court. It is clear, however, that the principles elucidated in these cases apply equally to a district court reviewing a prior ruling in a post-verdict motion.

A different presumption applies, however, to retroactive application by a reviewing court of *new judicial interpretations of existing law* by higher courts. Because newly-adopted judicial decisions have "traditionally been regarded as expression[s] of pre-existing law," *Bonjorno*, 494 U.S. at 847, 110 S.Ct. at 1582 (Scalia, J., concurring) (citations omitted), they apply retroactively to cases pending when the decision is rendered. *Chowaniec v. Arlington Park Race Track, Ltd.*, 934 F.2d 128, 131 (7th Cir.1991); *E.E.O.C. v. Vucitech*, 842 F.2d 936, 941 (7th Cir.1988). Thus, "[i]n civil cases, the [above-referenced] presumption against retroactive substantive lawmaking is actually reversed when the newly promulgated 'law' is a judicial decision, whether overruling a previous decision or otherwise changing the settled course of the law." *Luddington*, 966 F.2d at 228. *See also United States v. Security Indus. Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982) (noting that "[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student"); *Chowaniec*, 934 F.2d at 131–32; *Vucitech*, 842 F.2d at 941. As a result, lower courts should generally apply newly-enacted judicial decisions by higher courts to pending cases. *See, e.g., Chowaniec*, 934 F.2d at 131–32; *Vucitech*, 842 F.2d at 941.

■ In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), however, the Supreme Court crafted a narrow exception to this general rule. In *Chevron*, the Supreme Court held that a civil, nonconstitutional precedent [6] should be applied on a prospective basis only if (1) it establishes "a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; (2) retroactive application would retard the operation of a federal rule as determined by its prior history, purpose, and effect; *and* (3) retroactive application would "produce substantial inequitable results." *See, e.g., Ben-*

*nett v. Jett*, 956 F.2d 138, 140 (7th Cir.1992); *Chowaniec*, 934 F.2d at 131; *Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1326 (7th Cir.1989); *Vucitech*, 842 F.2d at 936. The *Chevron* exception, however, is generally available only where retroactive application of statutes of limitation or other jurisdictional rulings are at issue. *See Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 608, 107 S.Ct. 2022, 2025, 95 L.Ed.2d 582 (1987); *Moore v. Floro*, 614 F.Supp. 328, 331 (D.C.Ill.1985). Given the above-referenced presumption favoring retroactivity of judicial decisions in civil, nonconstitutional cases, the complaining party bears the burden of establishing that each prong of *Chevron* is satisfied. *Bennett*, 956 F.2d at 140; *N.L.R.B. v. Lyon & Ryan Ford, Inc.*, 647 F.2d 745, 757 (7th Cir.1981), *cert. denied* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981).

### 3. *Mitigation of Damages:*

■ Damages for back pay under Title VII are calculated by measuring the difference between (1) actual earnings from dismissal to judgment, and (2) wages that would have been earned absent discriminatory conduct by the defendant. *Chesser v. State of Illinois*, 895 F.2d 330, 337–38 (7th Cir.1990); *Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.*, 755 F.2d 599, 606 (7th Cir.1985); *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir.1979). *See* 42 U.S.C. § 2000e–5(g) ("[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable"). Similarly, damages for front pay under Title VII are calculated by measuring the difference between (1) actual future earnings projected from the date of judgment, and (2) future wages that would have been earned absent discriminatory conduct by the defendant. *See, e.g., Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993) (defining front pay as "a monetary award equal to the gain [the plaintiff] would have obtained if reinstated"); *Fortino v.*

---

6. A newly-enacted constitutional precedent by a higher court which affects state or federal criminal prosecutions pending on direct appeal should "be applied retroactively ... with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

*Quasar Co., A Div. of Matsushita Electric Corp. of Am.*, 950 F.2d 389, 398 (7th Cir. 1991) (defining front pay as a monetary award given if "it isn't feasible to order the successful plaintiff reinstated in the defendant's employ ... designed to monetize the value of that lost opportunity").[7] A finding that an employer violated Title VII at the liability stage of the proceedings triggers a rebuttable presumption that the plaintiff is entitled to full relief. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 362, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977). *See also E.E.O.C. v. Gurnee Inn Corp.*, 914 F.2d 815, 817 (7th Cir.1990); *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir.1989); *United States v. City of Chicago*, 853 F.2d 572, 575 (7th Cir.1988). The plaintiff has the burden of proving the amount of economic loss suffered as a result of the defendant's discrimination, *Gaddy*, 884 F.2d at 318; this includes presenting evidence as to any wages received in other employment, whether "comparable" or "non-comparable." *Taylor*, 593 F.2d at 787.

■ After the plaintiff establishes the amount of damages, the employer may demonstrate, as an affirmative defense, that the plaintiff failed to mitigate his or her damages, thus reducing the size of his or her monetary award accordingly. *Gurnee*, 914 F.2d at 818. The employer bears the burden

of proving a failure to mitigate. *Gurnee*, 914 F.2d at 818; *Gaddy*, 884 F.2d at 318; *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 411 (7th Cir.1989). To prevail in its mitigation defense, the employer must prove that (1) the plaintiff was not reasonably diligent in seeking other employment, *and* (2) with the exercise of reasonable diligence, there was a reasonable chance that the plaintiff might have found comparable employment. *Gurnee*, 914 F.2d at 818; *Gaddy*, 884 F.2d at 318; *Donnelly*, 874 F.2d at 402; *City of Chicago*, 853 F.2d at 578.

■ A plaintiff may satisfy the first prong of the mitigation requirement "by demonstrating a continuing commitment to be a member of the work force;" this includes accepting part-time work in another employment field. *See, e.g., Donnelly*, 874 F.2d at 402. The first prong of the mitigation requirement is also met when a plaintiff has remained "ready, willing, and available to accept employment," and the employer has not produced adequate evidence that the plaintiff has foregone employment opportunities with reasonable prospects of success. *Gaddy*, 884 F.2d at 319.

In satisfying the second prong of the mitigation requirement, a plaintiff is not obligated to "go into another line of work, accept a demotion or take a demeaning position,"

---

7. Front pay is clearly awardable under the compensatory damages provision of the 1991 Act. However, the propriety of awarding front pay to an aggrieved pre–1991 Act Title VII plaintiff (assuming reinstatement is infeasible), while approved in several Circuits, *see, e.g., Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 (11th Cir.1991); *Carter v. Sedgwick County, Kansas*, 929 F.2d 1501, 1505 (10th Cir.1991); *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1449 (9th Cir.1990); *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159 (6th Cir.1985), "remains an open question in this circuit." *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir.1993). *See also Snider v. Consolidation Coal Co.*, 973 F.2d 555, 561 n. 13 (7th Cir.1992); *McKnight v. General Motors Corp.*, 908 F.2d 104, 117 (7th Cir.1990). However, at least one other district court within the Seventh Circuit, while choosing not to retroactively apply compensatory damages, punitive damages, and jury trial provisions of the 1991 Act, nevertheless found that "front pay was, indeed, available under Title VII." *Pelech v. Klaff-Joss, LP*, 828 F.Supp. 525, 536 (N.D.Ill.1993).

In this case, the Court initially denied the plaintiff's request that the jury receive a specific instruction that front pay is awardable under Title VII; however, upon oral motion by the plaintiff, we reversed our position. *See infra* pages 625–26 and note 14. In particular, the Court found persuasive the Seventh Circuit's ruling in *Fortino v. Quasar Co., A Div. of Matsushita Elec. Corp. of Am.*, 950 F.2d 389, 398 (7th Cir. 1991), an ADEA case, that front pay is an equitable remedy because it is granted in lieu of reinstatement, rather than a legal remedy because it resembles common law damages; thus, we concluded that the jury instructions should be amended to make clear that front pay was, in fact, awardable under both pre- and post-1991 Act Title VII law.

The plaintiff likely waived any right to reinstatement, and to a court determination regarding front pay, by agreeing to resolve this matter by jury trial. *See infra* pages 626–27. However, after conducting the trial, it is nevertheless clear to the Court that reinstatement would be inappropriate in this case.

*Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982); *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1143 (7th Cir.1992), or to "accept or maintain inferior employment." *City of Chicago*, 853 F.2d at 578. However, a plaintiff should adjust his or her notions of "comparable" employment accordingly as the period of unemployment continues. *See City of Chicago*, 853 F.2d at 579 n. 3 (*citing Ford Motor*, 458 U.S. at 232 n. 16, 102 S.Ct. at 3065 n. 16); *Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1428 (7th Cir. 1986) (finding that, while mitigation efforts "might have been sufficient if the period of unemployment had been shorter; they were not good enough for five years (citations omitted) ... You cannot just leave the labor force after being wrongfully discharged, in the hope of someday being made whole by a judgment at law.").

■ The Court has discretion to award prejudgment interest for any back pay awarded to the plaintiff, *Donnelly*, 874 F.2d at 411; *Taylor*, 593 F.2d at 787, and should make such an award when the economic loss to the plaintiff is easily ascertainable. *Donnelly*, 874 F.2d at 411–12; *Hunter*, 797 F.2d at 1425–26.

### B. PARTIES' ARGUMENTS

■ Ms. Hutchison argues that the jury's award of $80,000.00 in back pay is "considerably less than the amount of [her]

demonstrated loss," and claims that there is no evidence to support the jury's "implicit finding" that she failed to mitigate her damages. Plaintiff's Memorandum in Support of Motion for New Trial on the Issue of Damages at 1–2. Ms. Hutchison argues that the evidence clearly indicates that (1) she exercised reasonable (in fact "heroic") diligence to mitigate her damages, and (2) there was no reasonable likelihood that she would have found comparable work by exercising such diligence. *Id.* at 7–18. She assesses lost back pay from her date of termination to the date of trial at either $120,493.39 (assuming no pay increases or fringe benefits from 1989 to 1993) or slightly over $147,819.06 (the amount in salary and bonuses, excluding fringe benefits, of Barbara Hebert, Ms. Hutchison's replacement, from January 1, 1990 to March 31, 1993). *Id.* at 3–5. Ms. Hutchison also argues that the evidence clearly indicates that she was entitled to an award of front pay based on loss of future earnings at either $35,000.00 per year (assuming she could have found another office manager position at $13.25 per hour, or $1.75 less per hour than she was paid at Amateur) or $16,457.63 per year (assuming she completed her current retraining as a medical transcriptionist and found a position paying $7.99 per hour). *Id.* at 5–7. Finally, Ms. Hutchison claims that the jury may "reasonably have been confused" by the jury instructions regarding front pay[8] and emotional damages. *Id.* at 20.

8. The ADEA grants a plaintiff a jury trial right as to "any issue of fact ... regardless of whether equitable relief is sought by any party in such action." 29 U.S.C. § 626(c)(2). As Ms. Hutchison has not objected to any of the jury's liability findings, they remain intact for purposes of the instant motion. Had the jury found that the defendants were liable under the ADEA, the Court would have been obligated to decide both the right to and amount of front pay thereby awardable to Ms. Hutchison, as the Seventh Circuit has found that front pay under the ADEA is an equitable remedy (in lieu of reinstatement) to be decided by the Court rather than a legal remedy (akin to common law damages) to be decided by the jury under the Seventh Amendment. *See, e.g., Price v. Marshall Erdman & Assoc., Inc.*, 966 F.2d 320, 324 (7th Cir.1992); *Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am.*, 950 F.2d 389, 398 (7th Cir.1991). However, when related equitable and legal matters are tried concurrently before both the

Court and a jury, the Court is bound by the factual findings of the jury. *See, e.g., Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) (finding that "only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims); *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1137–38 (7th Cir.1992) (noting that "It has long been the rule in this Circuit that a 'jury's verdict, when ... claims are tried simultaneously, binds the judge on factual issues common to both claims.'" (citations omitted)). Therefore, because the jury in this case found that the defendants were not liable under the ADEA, we are precluded from making any findings of fact as to damages for front pay or other equitable remedies under the ADEA. Furthermore, it also appears that the plaintiff nevertheless waived any right to Court adjudication as to front pay awardable under the ADEA. *See infra* pages 626–27.

The defendants respond that the jury verdict is, in fact, excessive and request that the Court "reduce the amount of damages to either $1,200 if the court believes that Ms. Hutchison should have been able to find a job within two weeks if she were to have availed herself of a temporary agency, or $10,666 if the court believes that she should have found a job within a four-month period of time." Defendant's Memorandum in Opposition to Plaintiff's Motion for a New Trial at 4. The defendants argue that the evidence clearly supports a jury finding of failure to mitigate given Ms. Hutchison's "failure to use a temporary agency or full time employment agency." *Id.* Finally, they also assert that Ms. Hutchison is entitled to no back pay award beyond a four-month period as, during the first two years she was unemployed, she "was looking for jobs that she was not qualified for [sic] because of the pay that she was demanding." *Id.* at 1–2.

## C. ANALYSIS

### 1. *Retroactive Application of the Civil Rights Act of 1991 to the Instant Case:*

Before addressing the instant motion, the Court must first consider, *sua sponte,* the impact of *Mojica* on our earlier decisions in this case regarding the retroactive application of the 1991 Act.

As previously mentioned, the Court decided in this case to retroactively apply the compensatory damages and, derivatively, jury trial provisions of the 1991 Act while excluding its punitive damages provision. We adopted this position after considering the Seventh Circuit rulings in *Mozee* and *Luddington,* which address retroactive application of the 1991 Act to cases pending on appeal as of the effective date of the 1991 Act, as well as conflicting district court opinions within the Seventh Circuit regarding the retroactive application of the 1991 Act to pending cases *filed after the effective date of the 1991 Act.*[9] In resolving this issue, the Court lent particular credence to the policy considerations articulated in *Brown v. Amoco Oil Co.,* 793 F.Supp. 846 (N.D.Ind.1992)

(Moody, J.), a Title VII case filed prior to the effective date of the 1991 Act:

"This court agrees with the *Mozee* dicta that would apply the compensatory damages provisions of the Act retroactively. The court had analyzed *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), concluding that it 'stands for the proposition that statutory provisions impacting substantive rights and obligations will not be retroactively applied.' It later distinguished *Bennett* with reference to compensatory damages:

'[T]he policy underlying the *Bennett* decision is not implicated when applying the damage provisions in effect at the time in which proceedings are initiated. *Granted, the greater an award of damages for proscribed, unwanted conduct, the less likely that persons and entities will perform this unwanted conduct. Nonetheless, the traditional theory underlying at least compensatory damages is that they are meant to compensate parties for their losses. See Dan B. Dobbs, Remedies § 3.1 (1973). Because society's valuation of a victim's losses understandably changes over time, it does not seem unfair to force litigating parties to comply with the more recent statutory changes with regard to damages* [emphasis added].'

*Mozee,* 963 F.2d at 936. The Seventh Circuit also found precedent supporting its distinction between substantive changes in the law and changes in procedure or remedies. *Mozee,* 963 F.2d at 940 [citations omitted].

This court is troubled by the *Mozee* analysis to the extent that it trumps the acknowledged effect of a new damage provision on the expectations of regulated persons with a vague application of what seems 'fair.' *Nevertheless, this court agrees that adding compensatory damages to the pre-existing equitable remedies available through Title VII is a change sufficiently marginal in nature to warrant retroactive application. While adding compensatory damages is a change in what persons may have expected in planning their conduct under Title VII, it is a*

---

**9.** *See supra* pages 618–19.

*narrow change in remedies closely related to those that already exist* [emphasis added]. Where a new remedy does not affect the substantive elements of liability and also does not work a radical change in the consequences of regulated conduct, then, in accord with *Mozee*, this court holds it may be presumed retroactive where the legislature fails to speak on the issue.

The court, however, concludes that the punitive damage remedy in §§ 102(a) and 102(b)(1) of the Act is not retroactive. *Adding punitive damages to the remedial options under Title VII directly affects the nature of substantive liability ... By adding punitive damages to Title VII where this newly defined subset of prohibited conduct exists, the Act works a radical change in the consequences of a Title VII violation ... The court concludes that it would be 'unfair to force litigating parties to comply with the more recent statutory changes with regard to [punitive] damages.' Potential Title VII defendants are entitled to notice that a penalty may result from their malicious or recklessly indifferent Title VII violations before the conduct that plaintiffs may seek to penalize* [emphasis added]. Thus, this court concludes that punitive damages should not apply retroactively to conduct predating legislation enacting the penal remedy, except where the legislature expressly requires that result and not constitutional defect occurs."

*Id.* at 849–50.

The *Brown* decision was issued after *Mozee* but before *Luddington.* After *Luddington,* the viability of the holding in *Brown* regarding retroactive application of the 1991 Act in Title VII cases filed prior to the effective date of the 1991 Act was clearly at issue; however, its reasoning continued to be viewed as persuasive authority by district courts deciding retroactivity of the 1991 Act in cases filed after such date. Therefore, joining other district courts in this Circuit, *see, e.g., Dombeck,* 823 F.Supp. 1475; *Carini,* 817 F.Supp. 762, we employed the policy considerations underlying *Brown* in the instant case.[10]

The Seventh Circuit issued its *Mojica* opinion on September 27, 1993, ten days after the jury rendered its Special Verdict in this case. As previously indicated, although the plaintiff in *Mojica* brought her initial Title VII complaint prior to the effective date of the Act, the Seventh Circuit determined that its holding should not be limited to such cases:

> "Therefore, courts should look to the time of the conduct giving rise to the claim to determine the statute's applicability. Simply put, if the conduct took place before the statute's enactment, it is not covered; if after, it is covered."

*Mojica,* 7 F.3d at 558. Thus, the language employed by the Seventh Circuit in *Mojica* clearly indicates that the applicability in Title VII cases of the 1991 Act, including its compensatory damages, punitive damages, and jury trial provisions, depends entirely on the dates of the allegedly discriminatory conduct, and not on the date of filing of the complaint, *see Luddington,* 966 F.2d at 229–30, or on the characterization of such provisions as substantive or procedural, *see Mozee,* 963 F.2d at 936–38.[11]

With the benefit of hindsight, and given the rationale employed by the Seventh Circuit in *Mojica,* it is apparent that, despite the conflicting authority among district courts within the Seventh Circuit, the Court erred in retroactively applying the compensatory damages and jury trial provisions of the 1991

10. *See supra* pages 618–19.

11. While not elaborated upon in *Mojica*, policy reasons other than the "unfair[ness of making] persons accountable for acts that did not violate statutory laws when they were performed" exist for giving equal treatment to Title VII cases filed before and after the effective date of the 1991 Act in retroactivity analysis. It would be strange, indeed, if two employees discriminated against by the same employer in the same manner and at the same time prior to the effective date of the 1991 Act were granted vastly different rights and remedies by courts interpreting Title VII and the 1991 Act simply because one employee judiciously pursued her claim prior to the effective date while the other, either dilatorily or anticipating passage of the 1991 Act, filed her claim after such date. Courts generally avoid rulings which would encourage such unprincipled and fortuitous results.

Act, and should have conducted the trial in this case under the provisions of Title VII as scripted before the effective date of the 1991 Act. The next question, then, is whether the Court should retroactively apply the *Mojica* decision to the instant motion; and, if so, its ramifications on the underlying jury verdict.

### 2. *Retroactive Application of Mojica to the Instant Motion:*

█ As previously indicated, a reviewing court should generally apply newly-adopted judicial decisions retroactively to cases pending when the decision is issued. As a result, the Court must apply *Mojica* when reviewing the sanctity of the jury verdict in the instant motion unless each of the three prongs of the *Chevron* exception are met.

None of the above-enumerated *Chevron* factors are met in this case. First of all, the Seventh Circuit in *Mojica* did not "overrule clear past precedent" or "decide an issue of first impression whose resolution was not clearly foreshadowed," as its conclusion that retroactivity depends on the time of unlawful conduct, while not specifically applied prior to *Mojica* to Title VII cases filed after the effective date of the 1991 Act, was, in fact, articulated and relied upon in both *Mozee* and *Luddington.*[12] Secondly, retroactive application of *Mojica* promotes, rather than "retard[s] the operation of" Title VII and the 1991 Act, as, *inter alia,* (1) it does not violate Congressional intent and conforms to the retroactivity presumptions previously described, *see Luddington,* 966 F.2d at 227; *Mozee,* 963 F.2d at 934, (2) pursuant to the Seventh Circuit in *Mojica,* Title VII defendants should only be subjected to sanctions existing as of the date of wrongful conduct, and (3) because a statute of limitations or jurisdictional question is not at issue, the plaintiff retains her right to pre–1991 remedies. Finally, retroactive application produces no "substantial inequitable results" as (1) Title VII defendants are given an opportunity to conform their conduct in response to the 1991 Act, (2) the plaintiff retains her pre–1991 Act remedies because a statute of limitations or other jurisdictional ruling is not involved, and (3) uniformity and fairness in Title VII jurisprudence are achieved because remedies are available based on time of conduct rather than time of suit.[13] As a result, retroactive application of *Mojica* to the instant motion is proper in this case.

As previously mentioned, it is clear after *Mojica* that the Court erred in determining that Ms. Hutchison was *entitled* under the 1991 Act to recover compensatory damages and, derivatively, to receive a jury trial regarding her Title VII claims; however, the Court nevertheless finds that the jury verdict remains effective. While the defendants have not raised any objection to the appropriateness of the jury instructions regarding compensatory damages, the Court must nevertheless apply the law as effective at the date of review of the verdict. Therefore, applying *Mojica,* the jury in this case should not have received any instructions regarding the award of compensatory damages, including emotional damages, under Title VII.

█ As previously mentioned, the plaintiff asserts that the jury may have been confused or mislead by the jury instructions because the Court, after reading the proposed instructions to the jury, agreed upon oral motion by plaintiff's counsel to clarify such instructions to make explicit that (1) front pay is awardable under Title VII as an element separate from compensatory damages,[14] and (2) failure to mitigate damages

---

12. *See supra* pages 618–619.

13. *See supra* note 11.

14. *See supra* note 7. The proposed instructions read to the jury stated, *inter alia,* that "the plaintiff may be entitled to either reinstatement or front pay in an amount equal to her loss of future earnings and benefits if these were caused by age discrimination," and that "the plaintiff may be entitled to compensatory damages for loss of future earnings and benefits as well as emotional pain, suffering, inconvenience, and mental an-

guish that the plaintiff experienced or will experience if these were caused by sex discrimination, sexual harassment, or retaliation." In drafting such provisions, it seemed clear to the Court that the jury would include front pay within the definition of "compensatory damages" and/or equate it with "loss of future earnings;" however, after considering the plaintiff's oral motion that the use of such terms may needlessly confuse the jury as well as the fact that front pay was available under Title VII prior to the compensatory damages provision of the 1991 Act, *see*

cannot be used to reduce any award for emotional damages under Title VII.[15] The Court specifically told the jury that they would receive a copy of amended instructions incorporating the modifications being discussed, and indicated to the parties that the instructions would be hand-corrected by marker. However, given the parties' (and Court's) desire to move expeditiously, we ultimately inserted such changes on the saved document in our word processor. These amended "clean" instructions were properly received by each juror; however, given the jury's awareness of such changes, the Court decided not to re-read the amended instructions to the jury.

Ms. Hutchison's claim that this sequence of events mislead the jury clearly lacks merit, as the jurors were, in fact, aware of the substance and nature of such changes, whose number was minimal. In addition, it does not appear that the instructions, as they were initially read to the jury, misstated the law in any way.[16] Moreover, we must presume that, in deliberations, the jurors consulted the written instructions for guidance rather than relying on memory to recall what the Court had previously read to them in a 23–page document. Finally, if we accept Ms. Hutchison's premise that the jurors specifically recalled the provisions at issue in the pre-amended instructions read to them by the Court, we must also presume that they remembered the substance of the plaintiff's oral motion and the subsequent articulation by the Court of our intention to clarify such provisions. Therefore, it is clear to the Court that the plaintiff is grasping at straws, as the jury was certainly not confused or mislead by the administering of the jury instructions in any way.

It initially appears that the application of *Mojica* to this motion would none-

theless invalidate the entire jury verdict as it also applies the non-retroactivity rule to the jury trial provision of the 1991 Act;[17] however, unlike our previous discussion regarding the non-retroactive application of the compensatory damages provision of the 1991 Act, separate authority exists for granting litigating parties a jury trial absent constitutional or statutory authorization. While the Seventh Amendment preserves the right of trial by jury in suits at common law, no commensurate constitutional provision "preserves any right to a trial without a jury in proceedings that were not suits at common law." 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2317 (1971 & Supp.1993) (finding that "[t]his is no new reading but one that has been settled for more than a century" (citations omitted)). *See, e.g., Beacon Theaters, Inc. v. Westover,* 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959) (finding that the right to jury trial is a constitutional one "while no similar requirement protects trial by the court"); *Fitzgerald v. U.S. Lines Co.,* 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963) (finding that, "[w]hile this Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them"). Recognizing the nonconstitutional protection granted to court trials, Federal Rule of Civil Procedure 39(c) ("Rule 39(c)") provides as follows:

> "In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, *except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial with a jury whose ver-*

---

supra note 7, we decided to nevertheless clarify the first quoted instruction by adding the terms "sex discrimination, sexual harassment, or retaliation" after the phrase "age discrimination."

**15.** Because the plaintiff was not entitled to receive any jury instructions regarding compensatory damages (including emotional damages) pursuant to *Mojica,* this objection is moot, and need not be considered by the Court.

**16.** *See supra* note 14.

**17.** Assuming this true, the Court would be required to (1) treat the jury verdict as advisory and adopt our own findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) ("Rule 52(a)"), or (2) grant the instant motion and order a new court trial pursuant to Rule 59(e).

*dict has the same effect as if trial by jury had been a matter of right* [emphasis added]."

More succinctly, "[i]n private litigation in which there is no right to trial by jury, the court, with the consent of the parties, may order trial with a jury." Wright & Miller, *supra,* at § 2333. Consent need not be express, and "[i]f one party demands a jury, the other parties do not object, and the court orders trial to a jury, this will be regarded as trial by consent." *Id.* (citing, *inter alia, Stockton v. Altman,* 432 F.2d 946 (5th Cir. 1970); *Kelly v. Shamrock Oil & Gas Corp.,* 171 F.2d 909 (5th Cir.1949)). *See also Bereda v. Pickering Creek Indus. Park, Inc.,* 865 F.2d 49, 52 (3rd Cir.1989); *North v. Madison Area Ass'n for Retarded Citizens–Dev. Ctr. Corp.,* 844 F.2d 401, 403 n. 2 (7th Cir.1988); *U.S. Philips Corp. v. Ferro Corp.,* 522 F.2d 1100, 1102 (6th Cir.1975). In such circumstances, "the verdict has the same effect as if trial by jury had been a matter of right and cannot be treated as advisory only." Wright & Miller, *supra,* at § 2333. *See also Bereda,* 865 F.2d at 52; *North,* 844 F.2d at 403 n. 2; *Ferro,* 522 F.2d at 1102.

Such were the circumstances in this case. As the United States is not a party to this action, the first element of the Rule 39(c) exception is not met.[18] As a result, although it is clear after *Mojica* that neither party had a constitutional or statutory jury trial entitlement in this case, it was proper under Rule 39(c) for the Court to conduct such a trial, even though based on the above-described erroneous retroactivity analysis, after obtaining consent from both parties. The parties, of course, impliedly evidenced such consent by failing to voice any objection to trial by jury, and expressly gave consent by jointly, and without objection, submitting to the Court a copy of proposed jury instructions.[19] Therefore, the jury verdict remains viable, and Ms. Hutchison may only attack its integ-

rity regarding the adequacy of damages awarded for back and front pay under Title VII and the jury's conclusion that she failed to mitigate her damages.

### 3. *Adequacy of Back Pay Award and Issue of Mitigation of Damages:*

█ As previously indicated, damages for back pay under Title VII are calculated by measuring the difference between actual earnings from dismissal to judgment and wages that would have been earned absent discriminatory conduct by the defendant. Ms. Hutchison calculates the wages she would have earned from termination to judgment, absent fringe benefits, at either $120,-493.39, assuming her 1989 salary remained constant, or over $147,819.06, assuming she would have received the same income as her replacement, Barbara Hebert. The defendants do not dispute these amounts, and it is apparent to the Court that the jury acted reasonably in adopting a figure within that range as her lost wage income from Amateur during such period. In addition, Ms. Hutchison represented that she received no job offers during such period, and her income was apparently negligible. Again, the defendants do not dispute this, and it is apparent to the Court that the jury subtracted a requisite minimal amount from the figure adopted for lost wages to determine her entitlement to back pay prior to consideration of the mitigation defense.

As previously indicated, damages for front pay under Title VII are calculated by measuring the difference between projected future earnings from the date of judgment and projected future wages that would have been earned by the plaintiff absent discriminatory conduct by the defendant. Ms. Hutchison calculates her loss of future earnings at either $35,000.00 per year, assuming she could find a comparable office position at a pay rate given by the defendant's vocational ex-

---

**18.** The second element of the Rule 39(c) exception is likely met, as Title VII, as it stood prior to the effective date of the 1991 Act, appears to be a statute "provid[ing] for trial without a jury" within the meaning of Rule 39(c) based on judicial interpretations, if not the explicit language, of 42 U.S.C. § 2000e–5(g), the exclusive remedial provision of Title VII prior to the 1991 Act.

However, Rule 39(c) requires satisfaction of both elements for the exception to apply.

**19.** Moreover, neither party objected in post-verdict motions to the conducting of a jury, rather than court, trial; the Court was forced to raise and address the issue in this motion *sua sponte* pursuant to our retroactive application of *Mojica.*

pert, Joan Hedden, of $13.25 per hour ($1.75 per hour less than she earned at Amateur), or between $12,457.63 (according to Ms. Hedden) and $16,457.63 per year (according to the plaintiff's vocational expert, Timothy Riley), assuming she finds placement after her current retraining as a medical transcriptionist at between $7.99 and $10.00 per hour. The defendants object to any front pay award based on her failure to properly mitigate damages.

Clearly, by awarding a total of $80,000 in back pay and nothing in front pay, the jury found that Ms. Hutchison failed to appropriately mitigate her damages. To reach this conclusion, the jury must have been persuaded by the evidence presented by the defendants that (1) Ms. Hutchison was not reasonably diligent in seeking other employment, and (2) by exercising such reasonable diligence, there was a reasonable chance that Ms. Hutchison would have found comparable employment.

Regarding the first prong, the Court is satisfied that the jury acted reasonably in concluding that Ms. Hutchison did not exhibit reasonable diligence in her job search. This issue came down to a battle of experts. After the plaintiff introduced testimony that, as part of her job search, she registered with the State of Wisconsin Job Service ("WJS"), attended seminars, joined a networking group, took courses to upgrade her computer skills, answered newspaper ads, and submitted nearly 600 resumes to prospective employers (with over 40 personal or telephone interviews and no job offers), Mr. Riley described her job search efforts as "heroic." Not surprisingly, Ms. Hedden was not so enamored with the plaintiff's job search, and indicated that, had Ms. Hutchison registered with a temporary employment agency, she would likely have been put to work within two weeks, and, if her description of her job search efforts was accurate, should certainly have been able to find a job within three or

four months after her termination. The defendants also noted that, except for WJS, Ms. Hutchison failed to engage the services of a regular full-time employment agency, and presented evidence that full-time employment agencies exist that specialize in placing persons with secretarial skills.

■ "Reasonable diligence" requires that a prospective employee exhibit satisfactory effort in finding employment *by utilizing appropriate channels and procedures.* Obviously, the degree of effort and procedural measures required to obtain employment differ among job categories and industries depending on market conditions, skill requirements, and the nature of the work, and job applicants are expected to conduct their searches accordingly, especially as the period of unemployment continues. Based on the evidence presented by the parties and their experts, the jury may have determined that the plaintiff simply failed to adopt reasonable job search procedures, especially as her efforts proved fruitless over time.[20] A reasonable jury could have accepted Ms. Hedden's opinion that Ms. Hutchison, an experienced office manager with personnel background, did not act diligently by failing to utilize temporary or full-time employment services specializing in placing persons with her skills, especially as her period of unemployment exceeded several years. Such factual determinations by the jury, when supported by the requisite degree of evidence, should not be disturbed by the Court, even if we, as factfinder, would have reached a contrary conclusion.[21]

■ The jury also acted reasonably in concluding that, with the exercise of reasonable diligence, Ms. Hutchison would have found comparable employment. As stated in the jury instructions, "a position constitutes comparable employment if it would afford the plaintiff virtually identical promotional opportunities, compensation, job responsibili-

---

**20.** As a prerequisite to this position, the jury need not have concluded that Ms. Hutchison failed to mitigate simply because she was not successful in finding alternative employment; rather, it need only conclude that her response in her employment search to her initial lack of job prospects was unreasonable.

**21.** The Court expresses no opinion as to our agreement or disagreement with the jury's verdict; we only find that the jury acted reasonably in reaching its conclusions.

ties, working conditions and status as the positions from which she was discharged." As previously noted, however, as the period of unemployment grows, a prospective job applicant is expected to adjust his or her notions of "comparable employment" accordingly, and may not constructively abandon the job market in the hope of someday being made whole by a judgment at law.

In this case, evidence was presented at trial indicating that Mr. Sterman, despite his grossly inappropriate office behavior, was an unusually generous boss, sometimes showering his employees with gifts and bonuses and paying them well-above-market wages. While his motives for doing so were arguably questionable,[22] the jury may have reasonably determined that Ms. Hutchison, earning nearly $32,500.00 a year in base salary, absent fringe benefits and bonuses, was one such "overcompensated" employee. Assuming this true, and in light of evidence presented as to Ms. Hutchison's lack of experience with computer application programs, it is clear that other jobs in the local market with "virtually identical" working conditions, promotional responsibilities, job responsibilities, and status could not possibly offer her the same compensation level; according to Ms. Hedden, the most Ms. Hutchison could expect to receive would be $1.75 less per hour than she received at Amateur. Therefore, in once again resolving a battle of experts and conflicting evidence, the jury either agreed with Ms. Hedden, or concluded on its own, that Ms. Hutchison either (1) applied for jobs for which she was inherently not qualified, or (2) believed that lack of employment would enhance the value of her lawsuit. In reaching the former conclusion, the jury may have been particularly persuaded by evidence presented by the defendants as to Ms. Hutchison's willingness to accept a lower-paying job as her period of unemployment increased.[23] As a result, the jury may have justifiably concluded that Ms. Hutchison effectively abandoned the job market at some point during her period of unemployment because, as it became clear to her that, given her skill level and training, she could not demand an identical salary for the same position in the market, she failed to adjust her employment expectations accordingly. Furthermore, as indicated above, the jury was likely persuaded by Ms. Hedden's testimony that, had Ms. Hutchison so adjusted her employment expectations, she would likely have found employment rather quickly. Again, such reasonable factual determinations by the jury in this case should not be disturbed by the Court, even if we, as factfinder, would have reached a contrary result.[24]

Finally, the jury acted logically in carrying over such conclusions into its analysis of her mitigation efforts regarding front pay. Persuaded by the expert testimony of Ms. Hedden, the jury may reasonably have set a date between termination and judgment by which Ms. Hutchison, using reasonable diligence, should have found "comparable" employment, as adjusted over time. Then, using Ms. Hedden's estimate that other office manager positions paid up to $13.25 per hour, the jury would have projected forward anticipated salary increases, bonuses, and fringe benefits as of such date, comparing such figures with her anticipated salary had she remained at Amateur. Calculating present and future values is never an exact science, as numerous factors must be considered in determining proper discount rates, future earnings, and relevant time frames. In an employment context, employers may cease to function; individuals may quit, incur layoffs, be terminated with or without cause, suffer illness or injury, or reach maximum performance, status, and salary levels; inflation rises and falls; individual business and entire industries may experience significant changes in performance; and foreign and domestic competition develops. Obviously, this list is not exhaustive; however, it indicates the difficulty that experts, let alone laymen and lay-

---

22. Testimony was presented at trial indicating that Mr. Sterman used such generosity as "hush money" to persuade targeted employees to tolerate his behavior.

23. The defendants indicated that it was almost a year after her termination before she was willing to accept jobs paying less than $20,000 to $24,000 a year, and two years after such date before she would accept jobs paying less than $16,000 a year.

24. *See supra* note 21.

women of the jury, typically have in projecting the future value of current employment positions. Given the speculative and amorphous nature of this task, it is clear that the jury would have acted prudently by utilizing a rather high discount rate and a broad band of estimates of future earnings. Under such an approach, it is understandable how the jury concluded that an award of front pay was not warranted in this case, and it would not be proper for the Court to revisit its results. Therefore, because the Court finds no manifest errors of law or fact, we determine that the damages for back and front pay awarded by the jury are adequately supported by the evidence and are not violative of notions of substantial justice.

■ Finally, because the above discussion regarding mitigation clearly indicates that the economic loss suffered by the plaintiff is not easily ascertainable, an award of prejudgment interest for the back pay awarded to the plaintiff is not appropriate.

### IV. SUMMARY

For the foregoing reasons, the Court hereby **ORDERS** that the plaintiff's Motion for a New Trial on the Issue of Damages pursuant to Federal Rule of Civil Procedure 59(a) ("Rule 59(a)") be **DENIED** in the above-captioned matter.

**SO ORDERED.**